**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE: INSULIN PRICING LITIGATION** | **Case No. 2:23-md-03080 (BRM)(LDW)** **MDL No. 3080** |
| **THIS DOCUMENT RELATES TO:** | **OPINION** |
| *Self-Funded Payors Track* | |
| Case Nos. 2:23-cv-07042, 2:23-cv-08487, 2:23-cv-21178 | |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is a Motion to Dismiss (the "Motion") filed by Defendants UnitedHealth Group Incorporated, OptumRx, Inc., and OptumInsight, Inc. (together, "OptumRx"); Evernorth Health, Inc., Express Scripts, Inc., Express Scripts Administrators, LLC's, ESI Mail Pharmacy Service, Inc., Express Scripts Pharmacy, Inc., Medco Health Solutions, Inc., and The Cigna Group (together, "Express Scripts"); and CVS Health Corporation, CVS Pharmacy, Inc., Caremark Rx, LLC, Caremark PCS Health, LLC, and Caremark, LLC (together, "CVS Caremark") (collectively, "PBM Defendants") to dismiss Plaintiff Self-Funded Payors' ("SFP Plaintiffs") operative Complaints[1] pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 252.)[2] SFP Plaintiffs filed an Opposition to PBM Defendants' Motion (ECF No. 257), and PBM Defendants filed a Reply (ECF No. 259). Having reviewed and considered the submissions filed in connection with

---

[1] (*See* ECF No. 158 (Albany County's ("Albany") Second Amended Complaint ("SAC")); ECF No. 159 (Lake County's ("Lake") First Amended Complaint ("FAC")); ECF No. 160 (King County's ("King") SAC.)

[2] The Court will use the citations on the master docket unless otherwise indicated.

the Motion, and for the reasons set forth below and for good cause having been shown, PBM

Defendants' Motion to Dismiss is **GRANTED** in part and **DENIED** in part.

I.    BACKGROUND

      A.  **Factual History**[3]

      For the purpose of this Motion to Dismiss, the Court accepts the factual allegations in the

First Amended Complaint as true and draws all inferences in the light most favorable to the SFP

Plaintiffs. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008); *accord Palin v.*

*N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019); *Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir.

2021); *Wyler Summit P'Ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1988).. The

Court also considers any "document *integral to or explicitly relied* upon in the complaint." *In re*

*Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit.*

*Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)); *accord DiFolco v. MSNBC Cable LLC*, 622

F.3d 104, 111 (2d Cir. 2010);  *Hobbs v. John*, 722 F.3d 1089, 1091 n.2 (7th Cir. 2013) (citing

*Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1984)); *United States v. Ritchie*, 342

F.3d 903, 908–09 (9th Cir. 2003).

      As the factual and procedural backgrounds of this matter are well-known to the parties, the

Court will address only the facts pertinent to this Opinion. This action arises out of Plaintiffs'

challenge to Defendants' allegedly unfair and unconscionable pricing scheme for their analog

insulin products. There are three groups of plaintiffs: (1) the Class Track Plaintiffs ("TPP

Plaintiffs"), SFP Plaintiffs, and the State Attorneys General ("State AG Plaintiffs") (collectively,

"Plaintiffs"). (ECF Nos. 158–160.) Plaintiffs generally categorize each defendant into one of two

---

[3] The Court assumes the parties' familiarity with the factual and procedural history of this matter and therefore only includes the facts and procedural history necessary to decide this Motion.

groups: Manufacturer Defendants[4] or PBM Defendants (collectively, "Defendants"). (ECF No. 158 ¶¶ 4–5; ECF No. 159 ¶¶ 4–5; ECF No. 160 ¶ 1.) Plaintiffs contend Manufacturer Defendants, who manufacture the vast majority of insulins and other diabetic medications available in the United States, worked together to artificially and willingly raise their list prices of insulin medications, and then paid an undisclosed portion of that price back to the PBM Defendants in order to gain formulary preference. (ECF No. 158 ¶¶ 4, 12, 17–18; ECF No. 159 ¶¶ 12, 14, 19–20; ECF No. 160 ¶¶ 10–13.) Plaintiffs allege that over the relevant time period, Manufacturer Defendants often raised prices "in lockstep," despite the fact that the cost to produce these drugs decreased during the same time period. (ECF No. 158 ¶ 11; ECF No. 159 ¶ 12; ECF No. 160 ¶¶ 12–14.)

PBM Defendants are pharmacy benefit managers ("PBMs"), or third-party administrators that negotiate drug costs and payments between health insurance providers and drug manufacturers. (ECF No. 158 ¶ 5; ECF No. 159 ¶ 5; ECF No. 160 ¶ 16.) Drug manufacturers set the list prices for their prescription drugs, including insulin. (ECF No. 158 ¶ 11; ECF No. 159 ¶ 12; ECF No. 160 ¶¶ 1, 11.) Here, Plaintiffs allege Manufacturer Defendants engaged in an unfair and unconscionable pricing scheme by artificially inflating the list prices for their insulin products so they could offer rebates as a secret Manufacturer Payment[5] to PBM Defendants in exchange for

---

[4] Manufacturer Defendants are comprised of defendants Eli Lilly and Company ("Eli Lilly"), Novo Nordisk Inc. ("Novo Nordisk"), and Sanofi-Aventis U.S. LLC ("Sanofi") (collectively, "Manufacturer Defendants").

[5] SFP Plaintiffs define "Manufacturer Payment" as "all payments or financial benefits of any kind conferred by the Manufacturer Defendants to the PBM Defendants . . . either directly via contract or indirectly via Manufacturer-controlled intermediaries." (ECF No. 158 ¶ 17 n.5; ECF No. 159 ¶ 19 n.6; ECF No. 160 ¶ 23.) "Manufacturer Payments includes rebates, administrative fees, inflation fees, pharmacy supplemental discounts, volume discounts, price or margin guarantees and any other form of consideration exchanged." (*Id.*)

preferred formulary[6] placements, which Plaintiffs contend caused them to overpay for insulin products (the "Insulin Pricing Scheme"). (ECF No. 158 ¶¶ 18, 20, 22; ECF No. 159 ¶¶ 18–20; ECF No. 160 ¶¶ 1–2, 18.)

### B. Procedural History

Albany filed its initial complaint in the Northern District of New York on September 16, 2022. (Dkt. No. 2:23-cv-07042, ECF No. 1.) PBM Defendants moved to dismiss Albany's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on December 14, 2022. (Dkt. No. 2:23-cv-07042, ECF No. 118.) Pursuant to the court's Order (Dkt. No. 2:23-cv-07042, ECF No. 129), Albany filed an amended complaint on February 24, 2023 (Dkt. No. 2:23-cv-07042, ECF No. 137). PBM Defendants again moved to dismiss Albany's amended complaint under Federal Rule of Civil Procedure 12(b)(6) on April 14, 2023. (Dkt. No. 2:23-cv-07042, ECF Nos. 154, 156–57.) Albany filed its opposition on June 2, 2023 (Dkt. No. 2:23-cv-07042, ECF No. 165), and PBM Defendants filed their replies on June 30, 2023 (Dkt. No. 2:23-cv-07042, ECF Nos. 169, 170, 172). On August 7, 2023, Albany filed a Notice of Conditional Transfer to Multidistrict Litigation, informing the court of the United States Judicial Panel on Multidistrict Litigation's (the "JPML") Conditional Transfer Order transferring the case to the District of New Jersey for inclusion in MDL No. 3080, *In re Insulin Pricing Litigation*. (Dkt. No. 2:23-cv-07042, ECF No. 173.) Albany's

---

[6] Formularies are a ranked list of approved drugs that an insurance plan will cover. (ECF No. 158 ¶ 8; ECF No. 159 ¶ 8; ECF No. 160 ¶ 18.) Drug manufacturers offer rebates (and other incentives) to PBMs to gain formulary access for their prescription drugs because they recognize that PBM formularies drive drug utilization. (ECF No. 158 ¶¶ 9, 17; ECF No. 159 ¶ 9; ECF No. 160 ¶¶ 19–20.)

transfer notice was not opposed, and the case was transferred to the District of New Jersey on August 17, 2023. (Dkt. No. 2:23-cv-07042, ECF No. 174.)

Lake filed its initial complaint in the Northern District of Illinois on April 18, 2023. (Dkt. No. 2:23-cv-08487, ECF No. 1.) PBM Defendants moved to dismiss Lake's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on July 14, 2023. (Dkt. No. 2:23-cv-08487, ECF Nos. 73–74.) On August 14, 2023, the JPML filed a Conditional Transfer Order to transfer the case to the District of New Jersey for inclusion in MDL No. 3080, *In re Insulin Pricing Litigation* (Dkt. No. 2:23-cv-08487, ECF No. 103), and the case was transferred to the District of New Jersey that same day (Dkt. No. 2:23-cv-08487, ECF No. 93).

King filed its initial complaint in the Western District of Washington on September 7, 2023. (Dkt. No. 2:23-cv-21178, ECF No. 1.) On September 9, 2023, King filed a Notice of Pendency of Other Action in Another Jurisdiction, requesting the case be transferred to the District of New Jersey for inclusion in MDL No. 3080, *In re Insulin Pricing Litigation* (Dkt. No. 2:23-cv-21178, ECF No. 3), and the matter was transferred on September 21, 2023 (Dkt. No. 2:23-cv-21178, ECF No. 6). King filed its amended complaint on November 7, 2023. (Dkt. No. 2:23-cv-21178, ECF No. 13.)

Pursuant to Case Management Order ("CMO") #6 (Stipulation and Order Governing Motions to Dismiss in the Self-Funded Payor Track), SFP Plaintiffs were permitted to file any amended complaints by April 24, 2024. (ECF No. 128.) On April 24, 2024, Albany filed its SAC[7]

---

[7] Albany brings claims against PBM Defendants for: violations of RICO, 18 U.S.C. § 1962(c) (Count I); conspiring to violate RICO, 18 U.S.C. § 1962(d) (Count II); violation of New York General Business Law, N.Y. Gen. Bus. Law § 349 (Count III); common law fraud (Count IV); unjust enrichment (Count V); and civil conspiracy (Count VI). (*See generally* ECF No. 158.)

(ECF No. 158), Lake filed its FAC[8] (ECF No. 159), and King filed its SAC[9] (ECF No. 160). PBM Defendants filed a consolidated Motion to Dismiss SFP Plaintiffs' complaints pursuant to federal Rule of Civil Procedure 12(b)(6) (ECF Nos. 251–52), SFP Plaintiffs filed a joint Opposition (ECF No. 257), and PBM Defendants filed a Reply (ECF No. 259).

## II.    LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 12(b)(6)

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228; *accord Palin*, 940 F.3d at 809; *Lax*, 20 F.4th at 1181; *Wyler Summit P'Ship*, 135 F.3d at 661. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286; *see also Rolon v. Henneman*, 517 F.3d

---

[8] Lake brings claims against PBM Defendants for: violations of RICO, 18 U.S.C. § 1962(c) (Count I); conspiring to violate RICO, 18 U.S.C. § 1962(d) (Count II); Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* (Count III); civil conspiracy (Count IV); unjust enrichment (Count V); and common law fraud (Count VI). (*See generally* ECF No. 159.)

[9] King brings claims against PBM Defendants for: violations of RICO, 18 U.S.C. § 1962(c) (Count I); conspiring to violate RICO, 18 U.S.C. § 1962(d) (Count II); civil conspiracy (Count III); common law fraud (Count IV); breach of implied covenant of good faith and fair dealing (Count V); unjust enrichment (Count VI); and violation of Washington Consumer Protection Act, WRC 19.86.010 et seq. ("WCPA") (Count VII). (*See generally* ECF No. 160.)

140, 149 (2d Cir. 2008); *Lax*, 20 F.4th at 1181. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *see also see also Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (citing *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556); *accord Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 113 (2d Cir. 2023); *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted); *see also Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (citing *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)). In assessing plausibility, the court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer

more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible, allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 670.

While, generally, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002). Specifically, courts may consider any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (emphasis added) (quoting *Shaw*, 82 F.3d at 1220); *accord DiFolco*, 622 F.3d at 111;  *Hobbs*, 722 F.3d at 1091 n.2 (citing *Wright*, 29 F.3d at 1248); *Ritchie*, 342 F.3d at 908–09. However, "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342.

### B.  Federal Rule of Civil Procedure 9(b)

Pursuant to Federal Rule of Civil Procedure 9(b), when alleging fraud, "a party must state with particularity the circumstances constituting fraud or mistake, although intent, knowledge, and

other conditions of a person's mind may be alleged generally." *In re Lipitor Antitrust Litig.*, 868 F.3d 231, 249 (3d Cir. 2017) (internal quotation marks and citations omitted); *see also Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004); *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *Camasta v. Jos A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). Accordingly, "a party must plead [its] claim with enough particularity to place defendants on notice of the 'precise misconduct with which they are charged.'" *U.S. ex rel. Petras v. Simparel, Inc.*, 857 F.3d 497, 502 (3d Cir. 2017) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 223–24 (3d Cir. 2004), *abrogated on other grounds by Twombly*, 550 U.S. at 557); *see also Kane ex rel. U.S. v. Healthfirst, Inc.*, 120 F. Supp. 3d 370, 382 (S.D.N.Y. 2015); *Murrow v. Quincy Bioscience Holding Co., Inc.*, Civ. A. No. 23-14893, 2025 WL 446149, at *3 (N.D. Ill. Feb. 10, 2025) (citing *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994)); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citing *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

## III.    DECISION

### A. Express Contracts

PBM Defendants assert SFP Plaintiffs' contracts with PBM Defendants "doom" SFP Plaintiffs' claims. (ECF No. 252 at 7–12.) PBM Defendants first argue SFP Plaintiffs rely on tort theories such as fraud, deception, and unfair or unjust conduct "to re-negotiate retroactively the contracts they agreed to with the PBMs." (*Id.* at 8.) Concerning SFP Plaintiffs' allegations pertaining to "a 'lack of transparency' regarding the money the PBMs earn from manufacturers," PBM Defendants contend there was no legal disclosure obligation, but that PBM Defendants nevertheless did "disclose[] that it may hold contracts with—and retain other sources of revenue

from—Manufacturer[ Defendants]." (*Id*. at 9–11.) Finally, regarding SFP Plaintiffs' "hodgepodge of complaints about the PBMs' interactions with pharmacies," PBM Defendants argue SFP Plaintiffs "do not even attempt to allege plausibly how PBMs earning revenue from pharmacies is tortious, violates any statute, or injures the [SFP Plaintiffs,]" because "[e]ach contract includes details about [SFP Plaintiffs'] pricing for prescription drugs." (*Id*. at 11–12.)

Despite PBM Defendants' arguments, it is not clear what relief PBM Defendants are seeking—whether they are arguing all, or just certain, claims must be dismissed because of their contracts with SFP Plaintiffs, or whether SFP Plaintiffs fail to state a claim for certain causes of action. PBM Defendants cite little-to-no case law in support of its contentions, and the Court cannot determine what relief PBM Defendants are seeking in this instance. Accordingly, the Court will not evaluate this argument. *See Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 271 (E.D. Pa. 2014) ("[I]t is not the court's responsibility to research the law and construct the parties' arguments for them." (citation omitted)); *see also Toscano v. Dep't of Personnel of N.J.*, Civ. A. No. 08-3779, 2009 WL 3335065, at *1 (D.N.J. Oct. 15, 2009) ("All motions to the Court must 'state with particularity the grounds for seeking the order.' Fed. R. Civ. P. 7(b)(1)(B). This particularity requirement ensures that when a motion comes before a court, the court will comprehend its basis and have 'enough information to process the motion correctly.'" (quoting *Registration Control Sys., Inc. v. Compusystems, Inc.*, 922 F.2d 805, 807–08 (Fed. Cir. 1990))).

## B.  Indirect Purchaser Rule

PBM Defendants argue the indirect purchaser rule bars "most" of SFP Plaintiffs' claims. (ECF No. 252 at 12–18.) PBM Defendants contend SFP Plaintiffs, who are suing as health plans, bring "claims about alleged overcharges that were paid to the Manufacturers by wholesalers," who purchase insulin directly from Manufacturer Defendants and have already brought suit for the

"same supposed overcharge." (*Id*. at 12–13.) They assert the rule applies to civil RICO claims, Washington consumer protection claims, and unjust enrichment claims under Illinois and Washington law. (*Id*. at 13.)

SFP Plaintiffs respond that their claims are not barred by the indirect purchaser rule because they are not indirect purchasers but rather direct purchasers "because they contracted with the PBMs for a suite of pharmacy benefit management services and, under those contracts, paid the PBMs directly for their beneficiaries' prescriptions." (ECF No. 257 at 20–25.) SFP Plaintiffs argue "courts look to who pays for the product, not who receives it." (*Id*. at 22.) However, PBM Defendants argue SFP Plaintiffs "are not direct purchasers because they only *reimbursed* the PBMs for part of the cost of insulin purchases [SFP Plaintiffs]' beneficiaries made from *pharmacies*." (ECF No. 259 at 5–6.) Said another way: "The [SFP Plaintiffs] are no more direct purchasers of insulin than Visa is a direct purchaser of a Starbucks latte; they may reimburse for the purchase, but the barista isn't calling their name." (*Id*. at 6.)

The Supreme Court developed the indirect purchaser rule in the antitrust context when it held that Clayton Act plaintiffs may not demonstrate injury by providing evidence only of indirect purchases. *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 737 (1977). The Court warned that allowing indirect purchasers to recover under such a theory would transform treble-damages actions into massive multiparty litigations involving many levels of distribution and including large classes of ultimate consumers remote from the defendant. *Id.* at 739. Moreover, the indirect purchaser rule was also intended to prevent defendants from being exposed to "multiple liability" should both indirect and direct purchasers in a distribution chain be permitted to assert claims arising out of a single overcharge. *McCarthy v. Recordex Serv. Inc.*, 80 F.3d 842, 851 (3d Cir. 1996); *Fiala v. B&B Enters.*, 738 F.3d 847, 851 (7th Cir. 2013); *In re ATM Fee Antitrust Litig.*, 686 F.3d 741, 749

(9th Cir. 2012). Because 18 U.S.C. § 1964(c), RICO's private cause of action, was modeled on the Clayton Act, "antitrust standing principles apply equally to allegations of RICO violations." *Id.* at 855 (finding indirect purchasers lacked standing to pursue claims under RICO); *Fiala*, 738 F.3d at 851.

More recently, the Third Circuit reiterated McCarthy's holding in *Humana, Inc. v. Indivior, Inc.*, Civ. A. No. 21-2573, 2022 WL 17718342, at *1 (3d Cir. Dec. 15, 2022), wherein plaintiffs, who were health benefit program insurers, brought RICO claims against defendants, alleging they fraudulently induced them to include a certain prescription drug on their formulary. The district court dismissed plaintiffs' complaints "because [plaintiffs] merely reimbursed the purchase of [the prescription drug], they were indirect purchasers of the drug and therefore lacked standing under the indirect-purchaser rule, first articulated in [*Illinois Brick*], and subsequently applied by [the Third Circuit] to RICO cases in [*McCarthy*]." *Id*. The Third Circuit affirmed the decision of the district court, concluding insurers that which merely reimbursed prescriptions for a drug were indirect purchasers and therefore lacked RICO standing. *Id*. at *2–3.

"When determining whether a plaintiff and defendant are involved in a direct purchaser/seller relationship, courts look to the 'economic substance of the transaction,' rather than the physical attributes of the transaction or the geographical movement of goods and services." *Animal Sci. Prods., Inc. v. China Minmetals Corp.*, 34 F. Supp. 3d 465, 500 (D.N.J. 2014); *Spinner Consulting LLC v. Stone Point Cap. LLC*, 623 B.R. 671, 676 ("In assessing whether a plaintiff is a direct purchaser, courts examine the 'economic substance of the transaction.'" (citation omitted)), *aff'd*, 843 F. App'x 411 (2d Cir. 2021). For example, the court in *Howard Hess* "found that, although the defendant manufacturer shipped goods directly to the plaintiff, the purchase was nevertheless 'indirect'; the direct purchaser was the intermediate dealer, not plaintiff,

who received the goods. The direct shipment of goods did 'not affect the economic substance of the transaction.'" *Id.* at 500–01 (quoting *Howard Hess Dental Laby's Inc. v. Dentsply Int'l, Inc.*, 424 F.3d 363, 373 (3d Cir. 2005)). Thereafter, in *Warren General Hospital v. Amgen Inc.*, 643 F.3d 77 (3d Cir. 2011), wherein the plaintiff-hospital sought to represent a class of entities that purchased pharmaceutical drugs manufactured and sold by Amgen, though the complaint did not set forth the mechanics of the drug purchases, "at the motion to dismiss stage, it became clear that Warren General Hospital in practice purchases Amgen's drugs through an independent middleman wholesaler known as AmerisourceBergen." 643 F.3d at 82. Therefore, "to determine whether plaintiff is a direct purchaser, the court must look to the 'economic substance' of the transaction." *Animal Sci. Prods.*, 34 F. Supp. 3d at 502; *Spinner*, 623 B.R. 676.

SFP Plaintiffs generally allege branded pharmaceutical drugs, such as those at-issue here, are distributed in one of three ways: "(a) from manufacturer to wholesaler (distributor), wholesaler to pharmacy, and pharmacy to patient; (b) from manufacturer to mail-order pharmacy to patient; or (c) from manufacturer to mail-order pharmacy, mail-order pharmacy to self-insured payor, and self-insured payor to patient." (ECF No. 158 ¶ 327; ECF No. 159 ¶ 290, *see also* ECF No. 160 ¶ 151 ("Pharmaceutical products originate in manufacturing sites; are transferred to wholesale distributors . . . ; are stocked at . . . pharmacies; are subject to price negotiations . . . by PBMs; are dispensed by pharmacies; and ultimately are delivered to and taken by patients." (emphasis added)).) No matter how the transaction is framed, considering the economic substance of the transaction, SFP Plaintiffs are not the direct purchaser. SFP Plaintiffs bring claims resulting from it "provid[ing] cost coverage and reimbursements for medical treatment and care of individuals." (ECF No. 158 ¶ 16; ECF No. 159 ¶ 18; ECF No. 160 ¶ 7.) Pursuant to *Humana*, this "is a textbook indirect-purchaser theory: [insurer-plaintiffs] seek redress for injuries suffered because their

insureds purchased [the at-issue medication] and the [insurer-plaintiffs] reimbursed those purchases." 2022 WL 17718342, at *3.

Accordingly, as an indirect purchaser, some of SFP Plaintiffs' claims are barred by the indirect purchaser rule. The Court is compelled to dismiss SFP Plaintiffs' civil RICO claims. *See In re Insulin Pricing Litig.*, Civ. A. No. 17-699, 2019 WL 643709, at *12 (D.N.J. Feb. 15, 2019) (dismissing in a related case plaintiffs RICO claims where "Plaintiffs have merely alleged a pass-through of the inflated price from one of the various intermediaries to the consumers," violating the indirect purchaser rule); *MSP Recovery Claims, Series, LLC v. Sanofi Aventis U.S. LLC ("MSP Recovery I")*, Civ. A. No. 18-2211, 2019 WL 1418129, at *16 (D.N.J. Mar. 29, 2019) (dismissing plaintiff's RICO claims regarding heightened coinsurance payments for insulin because plaintiff end payors lacked standing because they failed to allege they directly purchased insulin from defendants); *MSP Recovery Claims, Series LLC v. Abbott Lab'ys*, Civ. A. No. 19-21607, 2021 WL 2177548, at *7–8 (D.N.J. May 28, 2021) (finding plaintiffs lacked RICO standing because they failed to allege they directly purchased defendants' test strip products).

The Court is further obliged to dismiss SFP Plaintiffs' claims under Washington's consumer protection statute. *See In re Insulin Pricing Litig.*, Civ. A. No. 17-699, 2020 WL 831552, at *9 (D.N.J. Feb. 20, 2020) ("Washington courts have indeed held the [WCPA] precludes claims from indirect purchasers." (first citing *Blewett v. Abbott Lab'ys*, 86 Wash. App. 782, 790 (1997) ("[A]n indirect purchaser has not suffered cognizable injury under the [W]CPA."), then citing *Blaylock v. First Am. Title Ins. Co.*, Civ. A. No. 06-1667, 2008 WL 8741396, at *9 (W.D. Wash. Nov. 7, 2008) ("The [W]CPA has consistently been interpreted to favor direct victims of unlawful practices and exclude indirect victims.")).

14

The Court must also dismiss SFP Plaintiffs' claim for unjust enrichment under Washington law, as "[t]he Washington Court of Appeals has repeatedly held that the first element of an unjust enrichment claim requires the plaintiff to confer a benefit on the defendant directly." *NC Interactive, LLC v. Amber Studio S.A.*, Civ. A. No. 22-1251, 2024 WL 1832951, at *4 (W.D. Wash. Apr. 26, 2024) (citing *Lavington v. Hillier*, 510 P.3d 373, 379 (Wash. Ct. App. 2022); *Falcon Props. LLC v. Bowfits 1308 LLC*, 478 P.3d 134, 140 n.3 (Wash. Ct. App. 2020); *Allyis, Inc. v. Schroder*, Civ. A. No. 74511-5, 2017 WL 751329, at *4–5 (Wash. Ct. App. Feb. 27, 2017)). Here, it is apparent that the Manufacturer Defendants, not SFP Plaintiffs, were conferring the benefit onto PBM Defendants through the payment of Manufacturer Payments. (ECF No. 158 ¶ 17; ECF No. 159 ¶ 19; ECF No. 160 ¶ 23.) *See Frame-Wilson v. Amazon.com, Inc.*, 591 F. Supp. 3d 975, 995–96 (W.D. Wash. 2022) (dismissing plaintiffs' unjust enrichment claim because plaintiffs "allege[d] no facts consistent with the claim that they conferred a benefit to [defendant]").

Lastly, PBM Defendants argue the Court must dismiss SFP Plaintiffs' unjust enrichment claims under Illinois law. Under Illinois law, "[t]o state a cause of action for unjust enrichment, a plaintiff must establish: '(1) the defendant has unjustly retained a benefit to the plaintiff's detriment, and (2) the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.'" *MetroPCS v. Devor*, 215 F. Supp. 3d 626, 634–35 (N.D. Ill. 2016) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672 (1989)); *see also Clearly v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) ("Unjust enrichment is a common-law theory of recovery or restitution that arises when the defendant is retaining a benefit to the plaintiff's detriment, and this retention is unjust."). Unjust enrichment under Illinois law is not prevented by the indirect purchaser rule, and therefore, SFP Plaintiffs' unjust enrichment claims in Illinois are sustained.

Accordingly, this Court **GRANTS** PBM Defendants' Motion to Dismiss with prejudice as to SFP Plaintiffs' civil RICO claims, WCPA claims, and Washington unjust enrichment claims; and the Court **DENIES** PBM Defendants' Motion to Dismiss SFP Plaintiff's unjust enrichment claims under Illinois law.

### C.  Timeliness

PBM Defendants argue all of SFP Plaintiffs' claims should be dismissed as untimely because SFP Plaintiffs waited at least four years after their injury before filing suit, barring SFP Plaintiffs claims, all of which are subject to either a two-, three-, or four-year statute of limitations period. (ECF No. 252 at 18–25.) However, PBM Defendants' timeliness arguments are moot. After the parties filed all of their papers pertaining to this Motion, this Court, recognizing the statute of limitations issue affected all Plaintiffs across all tracks in the *In re Insulin Pricing Litigation* (Dkt. No. 2:23-md-3080), accepted supplemental briefing from all parties and heard oral argument regarding the issue of constructive notice. (*See* ECF Nos. 533–38; 563–65; 568, 569; 643, 666, 667.) As determined by this Court, the date of constructive notice for all Plaintiffs is January 14, 2021. (*See* ECF Nos. 706–07.) Because SFP Plaintiffs filed within two years of this date (September 29, 2022 (*see* Dkt. No. 2:23-cv-04214, ECF No. 12)), SFP Plaintiffs' claims are timely and not barred by any applicable statute of limitations.

### D.  SFP Plaintiffs' Consumer Protection Claims

PBM Defendants maintain SFP Plaintiffs' consumer protection claims must be dismissed because SFP Plaintiffs claims are not covered under consumer protection statutes, PBM

Defendants' conduct falls within applicable safe harbors, and SFP Plaintiffs fail to allege a consumer protection claim based on fraud or deception.[10] (ECF No. 252 at 36–41.)

PBM Defendants first argue SFP Plaintiffs' claims are not covered by consumer protection statutes for two reasons: (1) Lake is not a "person" authorized to sue for damages under the ICFA, and (2) Lake and Albany's consumer protection claims are not "consumer oriented." (ECF No. 252 at 36–38.)

SFP Plaintiffs do not respond to PBM Defendants' argument regarding Lake being considered a person under the ICFA (*see* ECF No. 257), and therefore this Court concludes Lake has waived any arguments against PBM Defendants' claim. *See Dreibelbis v. Scholton*, 274 F. App'x 183, 185 (3d Cir. 2008) (concluding the "District Court exercised sound discretion" in refusing to consider an argument that was waived by plaintiff who "had ample opportunity to make this argument in response to defendants' motion to dismiss and failed to do so") (citing *Confer v. Custom Eng'g Co.*, 952 F.2d 41, 44 (3d Cir. 1991); *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy*, 26 F.3d 375, 398 (3d Cir. 1994)); *see also Ragsdale v. Lora*, Civ. A. No. 20-16123, 2021 WL 4099785, at *4–5 (D.N.J. Sept. 9, 2021) (holding plaintiff waived the statute of limitations issue by failing to respond to defendants' arguments) (citing *Leisure Pass N. Am. LLC v. Leisure Pass Grp., Ltd.*, Civ. A. No. 12-3375, 2013 WL 4517841, at *4 (D.N.J. Aug. 26, 2013)). Accordingly, the Court dismisses SFP Plaintiffs' claim under the ICFA.

---

[10] The Court notes PBM Defendants also advance the argument that King and Lake's consumer protection claims fail because they do not allege a claim based on unfair conduct. (ECF No. 252 at 41–42.) As an initial matter, this Court will not consider PBM Defendants' arguments as to King, as the Court has determined that King's consumer protection claims are barred by the indirect purchaser rule. *See supra* Section III.B. Additionally, it is unclear whether PBM Defendants actually intended to argue Lake's consumer protection claims fail, as PBM Defendants have crossed out contentions regarding Lake in its moving brief. (*See* ECF No. 252 at 41.)

Finally, PBM Defendants contend Albany cannot bring claims under New York's General Business Law ("NYGBL") because the statute only applies to "consumer" injuries. (ECF No. 252 at 37–38.) PBM Defendants further point out this Court "previously held that a nearly identical suit alleging an 'insulin pricing scheme' brought by assignees of health care plans was not 'consumer oriented.'" (*Id*. at 38 (citing *MSP Recovery Claims, Series, LLC v. Sanofi-Aventis U.S. LLC ("MSP Recovery II")*, Civ. A. No. 18-2211, 2020 WL 831578, at *10 (D.N.J. Feb. 20, 2020).) SFP Plaintiffs respond their claims are consumer-oriented because the at-issue transactions affected average consumers. (ECF No. 257 at 35 (citing *Axiom Inv. Advisors, LLC v. Deutsche Bank AG*, 234 F. Supp. 3d 526, 537 (S.D.N.Y. 2017)).) SFP Plaintiffs also argue this Court's decision in *MSP Recovery II* is inapplicable because "Albany is a county, not a business," and, regardless, "NYGBL plaintiffs can recover for business-to-business transactions." (*Id*. at 35–36.)

In general, "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York] are . . . unlawful." N.Y. Gen. Bus. Law § 349(a) ("Section 349"). "To state a claim, a plaintiff must allege (1) that the defendant's acts were consumer oriented, (2) that the acts or practices are deceptive or misleading in a material way, and (3) that the plaintiff has been injured as a result." *In re Unite Here Data Sec. Incident Litig.*, 740 F. Supp. 3d 364, 386 (S.D.N.Y. 2024). Business-to-business transactions typically do not give rise to Section 349 claims. *See Exxonmobil Inter-Am., Inc. v. Advanced Info. Eng'g Servs., Inc.*, 328 F. Supp. 2d 443, 448 (S.D.N.Y. 2004). "However, New York courts have also held that Section 349 applies broadly to deceptive acts and practices aimed at consumers." *EEDW LLC v. Bank of Am., N.A.*, Civ. A. No. 22-2648, 2024 WL 2802847, at *8 (E.D. Pa. May 31, 2024) (citing *Plavin v. Grp. Health Inc.*, 146 N.E.3d 1164, 1168–69 (N.Y. 2020); *Karlin v. IVF Am., Inc.*, 712 N.E.2d 662, 665–66 (N.Y. 1999); *Walker v. Town of Hempstead*, 643 N.E.2d 77, 78–79 (N.Y. 1994)).

18

The Court has previously considered a substantially similar issue and determined "[a]n injury is not consumer oriented if it involves 'business-to-business transactions[,]' including transactions 'involving complex arrangements, knowledgeable and experienced parties and large sums of money.'" *MSP Recovery Claims, Series LLC v. Abbott Lab'ys*, Civ. A. No. 19-21607, 2023 WL 8718823, at *15 (D.N.J. Dec. 18, 2023) (quoting *Exxonmobil*, 328 F. Supp. 2d at 448). Here, similarly, the parties are sophisticated parties other than consumers—Plaintiff is a governmental entity and Defendants consist of national corporations and limited liability companies. (ECF No. 158 ¶¶ 76, 86, 92, 96, 101, 120, 128, 134, 136, 143, 147, 171, 179, 183, 188; ECF No. 159 ¶¶ 74, 84, 89, 92, 96, 114, 122, 127, 130, 138, 141, 166, 175, 178, 183; ECF No. 160 ¶¶ 72, 74–77, 90–93, 105, 107, 109.) Moreover, this case involves allegations of derivative, not direct, injuries. *See Johnson & Johnson Health Care Sys. Inc. v. Save on SP, LLC*, Civ. A. No. 22-2632, 2023 WL 415092, at *7 (D.N.J. Jan. 25, 2023) (finding plaintiff alleged a direct injury because the "alleged injury is not a consumer's injury that is then passed on to [p]laintiff"). In accordance with this Court's decision in *MSP Recovery Claims*, 2023 WL 8718823, at *15, the Court dismisses SFP Plaintiffs' claim under NYGBL.

Accordingly, PBM Defendants' motion to dismiss SFP Plaintiffs' consumer protection claims is **GRANTED**.

### E. SFP Plaintiffs' Common Law Fraud Claims

PBM Defendants argue SFP Plaintiffs' common law fraud claims must be dismissed because the "common law fraud claims contain elements that overlap with the Counties' mail-and-wire fraud RICO predicates and thus fail for the same reasons," and that SFP Plaintiffs fail to sufficiently allege a misrepresentation or omission or reliance thereon. (ECF No. 252 at 42–43.) PBM Defendants further assert SFP Plaintiffs' fraud claims "are separately foreclosed by their

contracts with PBM[ Defendants]." (*Id*. at 43.) SFP Plaintiffs respond this Court has already determined SFP Plaintiffs sufficiently plead "a fraudulent scheme by virtue of misrepresentations of list prices." (ECF No. 257 at 40–41 (citing *MSP Recovery I*, 2019 WL 1418129, at *19).) Moreover, SFP Plaintiffs argue they have sufficiently pled both intent and reliance and that their claims are not barred by any contract. (*Id*.)

Common-law fraud requires: "(1) a misrepresentation or omission of material fact; (2) that the defendant knew to be false; (3) that the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) that caused injury to the plaintiff." *Hunt v. Enzo Biochem, Inc.*, 530 F. Supp. 2d 580, 592 (S.D.N.Y. 2008) (citing *Crigger v. Fahnestock & Co., Inc.*, 443 F.3d 230, 234 (2d Cir. 2006)); *see also Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007) (declaring the basic elements of common law fraud are: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement") (quoting *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 591 (Ill. 1996)); *Guketlov v. Homekey Mortg., LLC*, Civ. A. No. 09-1265, 2009 WL 3785575, at *4 (W.D. Wash. Nov. 9, 2009) ("Under Washington law, a claim for fraud has the following nine elements: '(1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff.'" (quoting *Stiley v. Block*, 925 P.2d 194, 204 (Wash. 1996))).

SFP Plaintiffs allege PBM Defendants used the artificially inflated prices, set by the Manufacturer Defendants "to misrepresent the amount of 'savings' they generate for diabetics, payors, and the healthcare system." (ECF No. 158 ¶ 389 (listing specific dates and statements made by PBM Defendants which SFP Plaintiffs contend are misrepresentations); ECF No. 159 ¶ 348 (same); ECF No. 160 ¶ 212 (same).) Moreover, SFP Plaintiffs allege they relied on these misrepresentations. (ECF No. 158 ¶ 541 ("The PBM Defendants understand that payors like Plaintiff rely on the PBMs to achieve the lowest prices for the at-issue drugs and to construct formularies designed to improve access to medications. Plaintiff did so"); ECF No. 159 ¶ 480 (same); ECF No. 160 ¶¶ 352, 411 (same).) The Court finds SFP Plaintiffs sufficiently stated a claim for common law fraud.

PBM Defendants further argue SFP Plaintiffs' common law fraud claims "are separately foreclosed by their contracts with PBM[ Defendants]" because "[e]ach state prohibits a plaintiff from alleging a fraud claim that is not sufficiently distinct from the breach of contract claim." (ECF No. 252 at 43 (citations omitted).) SFP Plaintiffs respond their claims are not foreclosed by contract because their common law fraud claims "are far broader than a simple breach of contract." (ECF No. 257 at 41.)

Indeed, to maintain a claim of common law fraud under New York law, wherein that claim is based on an alleged breach of contractual duties, "a plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the contract, . . . ; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract . . . ." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996) (internal citations omitted). "The second exception—for collateral or extraneous misrepresentations that are actionable in fraud—is limited to '[m]isrepresentations of present facts made post-contract formation,' which constitute more than

21

a mere failure to perform a contractual obligation." *DM Manager LLC v. Fidelity Nat'l Info. Servs., Inc.*, Civ. A. No. 23-617, 2024 WL 1347724, at *7 (S.D.N.Y. Mar. 29, 2024) (quoting *Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504, 519 (S.D.N.Y. 2016)). Albany's fraud allegations fit squarely into this exception—after Albany entered into contracts with respective PBM Defendants, they:

> affirmatively misrepresented, omitted, or concealed and suppressed material facts concerning . . . : (a) the true cost and price of the at-issue drugs; the inflated and fraudulent nature of the list prices set and charged by [PBM] Defendants for the at-issue drugs; (c) the existence, amount, flow, and purposes of discounts and rebates offered or negotiated by [PBM] Defendants for the at-issue mediations; and (d) the role that Defendants played in the price paid for the at-issue, including marketing materials and other public statements stating that Defendants decrease the price of prescription drugs for consumers.

(ECF No. 158 ¶ 719.) *See also Minnie Rose*, 169 F. Supp. 3d at 520–21 (finding plaintiffs adequately alleged collateral misrepresentations by asserting defendants actively concealed the true price every time they sent an invoice); *Rojas v. Cigna Health & Life Ins. Co.*, Civ. A. No. 14-6368, 2018 WL 4759775, at *6–7 (S.D.N.Y. Sept. 29, 2018) (sustaining separate fraud counterclaims for plaintiffs' concealment of actual price in bills for medical tests sent over an extended period of time); *Jordan (Bermuda) Inv. Co. v. Hunter Green Invs. Ltd.*, Civ. A. No. 00-9214, 2003 WL 1751780, at *8 (S.D.N.Y. Apr. 1, 2003) (finding complaint alleged defendant's involvement in affirmative misrepresentations and actively covering up fraud rather than mere concealment of breach of contract). Accordingly, the Court finds Albany has sufficiently stated a claim for common law fraud.

The Court is even less convinced King's common law fraud claims are barred by contract, as PBM Defendants cite to a concurrence from Justice Sanders of the Supreme Court of Washington in support of its argument that "[t]o recover in tort, 'there must be a showing of harm above and beyond disappointed expectations evolving solely from a prior agreement.'" (ECF No.

252 at 43; *Alejandre v. Bull*, 153 P.3d 864, 876 (Wash. 2007) (en banc) (Sanders, J., concurring) (quoting *Factory Mkt., Inc. v. Schuller Int'l., Inc.*, 987 F. Supp. 387, 396 (E.D. Pa. 1997)).) The Court in *Alejandre* considered whether home-buyer plaintiffs could recover for an alleged breach of tort duties under the economic loss rule where a contractual relationship exists and the losses are economic in nature, determining the rule barred plaintiffs from bringing a tort claim against a vendor for fraudulent and negligent misrepresentation. 153 P.3d at 869–70. However, Washington courts have only "applied the doctrine [of economic loss] to a narrow class of cases, primarily limiting its application to claims arising out of construction on real property and real property sales." *Elcon Constr., Inc. v. E. Wash. Univ.*, 273 P.3d 965, 969 (Wash. 2012); *see also Eastwood v. Horse Harbor Found., Inc.*, 241 P.3d 1256, 1275–76 (Wash. 2010) (Chambers, J., concurring) ("We have done so in each case based upon policy considerations unique to those industries. We have never applied the doctrine as a rule of general application outside of these limited circumstances.") (directing lower courts not to apply the doctrine to tort remedies "unless and until this court has, based upon considerations of common sense, justice, policy and precedent, decided otherwise"). Accordingly, this Court does not find that King's common law fraud claims are barred by contract.

PBM Defendants similarly cite to *Moorman Manufacturing Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 450 (Ill. 1982), for the proposition that Lake's claims are barred by its contracts. (ECF No. 252 at 43.) In *Moorman*, the Illinois Supreme Court applied the economic loss rule to determine, "where only the defective product is damaged, economic losses caused by qualitative defects falling under the ambit of a purchaser's disappointed expectations cannot be recovered under a strict liability theory." 435 N.E.2d at 450. The plaintiff's claims in that case did not sound in fraud, and the Court merely concluded "that qualitative defects are best handled by contract,

rather than tort." *Id.* The Court does not find PBM Defendants' argument in this regard persuasive and therefore declines to dismiss Lake's common law fraud claims.

Accordingly, PBM Defendants' motion to dismiss SFP Plaintiffs' common law fraud claims is **DENIED**.

### F.  SFP Plaintiffs' Unjust Enrichment Claims

PBM Defendants argue, in addition to their contractual, indirect purchaser, and statute of limitations arguments, that SFP Plaintiffs fail to allege the elements of their unjust enrichment claims. (ECF No. 252 at 43–45.) PBM Defendants argue: (1) SFP Plaintiffs cannot bring unjust enrichment claims because they had "express contracts governing the precise topics on which they now claim the PBM[ Defendants] were unjustly enriched"; (2) King's unjust enrichment claim against OptumRx must be dismissed because King does not allege OptumRx served it; (3) Lake and Albany's claims must be dismissed as duplicative of their "defective statutory claims"; and, finally, (4) Albany's unjust enrichment claim should be dismissed because it requires a "direct benefit" from the plaintiff. (*Id.*)

SFP Plaintiffs respond that their unjust enrichment claims are not barred because the subject contracts do not "clearly cover[]" the parties' disputes. (ECF No. 257 at 41.) They further argue King has a claim against OptumRx because "Washington law does not require a plaintiff to confer a direct benefit on the defendant, and therefore permits King's unjust enrichment." (*Id.* at 44–45.) SFP Plaintiffs contend Lake and Albany's claims for unjust enrichment may proceed with their related statutory and common law claims because dismissal on this ground is too premature. (*Id.* at 43.) Lastly, SFP Plaintiffs argue Albany sufficiently alleges a benefit conferred on PBM Defendants because New York law does not require a direct benefit, but rather, requires the parties'

connection not be "too attenuated." (*Id.* at 42 (quoting *Myun-Uk Choi v. Tower Rsch. Cap. LLC*, 890 F.3d 60, 69 (2d Cir. 2018)).)

As an initial matter, the Court notes that it has already determined that King's unjust enrichment claims must be dismissed pursuant to the indirect purchaser rule. *See supra* Section III.B. Therefore, the Court only addresses the claims as asserted by Lake and Albany. To prevail on an unjust enrichment claim, 'a plaintiff must show that "(1) the defendant was enriched, (2) at the expense of the plaintiff, and (3) it would be inequitable to permit the defendant to retain that which is claimed by the plaintiff.'" *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 433 (S.D.N.Y. 2017) (quoting *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 290 (S.D.N.Y. 2014)); *see also id.* at 414 ("To prevail on a claim for unjust enrichment under Illinois law, a plaintiff must 'allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.'" (quoting *Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 922 (N.D. Ill. 2013) (applying Illinois law)).

However, "New York law 'precludes unjust enrichment claims whenever there is a valid and enforceable contract governing a particular subject matter, whether that contract is written, oral, or implied-in-fact.'" *Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739, 751 (S.D.N.Y. 2017) (quoting *Green Tree Servicing, LLC v. Christodoulakis*, 689 F. App'x 66, 71 (2d Cir. 2017)); *see also People ex rel. Hartigan v. E&E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992) ("Because unjust enrichment is based on an implied contract, 'where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application.'" (quoting *La Throp v. Bell Fed. Sav. & Loan Assoc.*, 370 N.E.2d 188, 195 (Ill. 1977))). "An unjust enrichment claim may survive a motion to dismiss when the validity or the scope of the contract is difficult to

determine, or if the claim at issue falls outside the contract." *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 887 (7th Cir. 2022).

Here, there is no contract that governs the dispute at issue. PBM Defendants argue "everything [SFP Plaintiffs] allege—from rebates and formularies, to prices, to supposedly 'mislabeled' fees—is addressed by specific provisions of [SFP Plaintiffs]' contracts." (ECF No. 259 at 20.) However, this oversimplifies SFP Plaintiffs' claims. SFP Plaintiffs allege "[PBM] Defendants wrongfully secured and retained a benefit in the form of amounts paid for diabetes medications, unearned fees, and other payments collected based on the market forces and prices generated by the Insulin Pricing Scheme, and revenues that would not have been realized but for the Insulin Pricing Scheme." (ECF No. 158 ¶ 740; ECF No. 159 ¶ 675.) SFP Plaintiffs allege PBM Defendants would rename some of the payments they received specifically to avoid being contractually obligated to turn those payments over to SFP Plaintiffs. (ECF No. 158 ¶¶ 441–46; ECF No. 159 ¶¶ 415–18.) That PBM Defendants learned how to game the system in order to siphon more payments off of Manufacturer Defendants is certainly not something SFP Plaintiffs contend were covered by their contracts with PBM Defendants. (*Id.*)

As it is not apparent any contract covers the subject matter of the Insulin Pricing Scheme, Lake and Albany's claims for unjust enrichment survive a motion to dismiss. *See Hernandez v. Ill. Inst. of Tech.*, 63 F.4th 661, 671 (7th Cir. 2023) ("[N]ot every case involving a contract claim is clear cut, especially at the pleading stage. To create breathing room in such circumstances, we have recognized that plaintiffs may plead contract claims and unjust enrichment in the alternative."); *Troia v. N. Cent. Coll.*, Civ. A. No. 20-5229, 2023 WL 6065346, at *3 (N.D. Ill. Sept. 18, 2023) ("[T]he Seventh Circuit noted that the parties' disagreement regarding 'whether the contract includes an implied promise to provide students in-person instruction and access to

on-campus facilities' is alone 'enough for the students' unjust enrichment claim to survive a motion to dismiss.'" (quoting *Gociman*, 41 F.4th at 887)); *Sackin v. TransPerfect Glob. Inc.*, 278 F. Supp. 3d 739, 751–52 (S.D.N.Y. 2017) (declining to dismiss unjust enrichment claim where there was a bona fide dispute as to the existence and scope of an implied contract between parties).

PBM Defendants next contend Lake and Albany's unjust enrichment claims should be dismissed as duplicative of SFP Plaintiffs' "defective statutory claims." (ECF No. 252 at 44.) The Seventh Circuit explained the doctrine of unjust enrichment succinctly:

> Unjust enrichment is a common-law theory of recovery or restitution that arises when the defendant is retaining a benefit to the plaintiff's detriment, and this retention is unjust. What makes the retention of the benefit unjust is often due to some improper conduct by the defendant. And usually this improper conduct will form the basis of another claim against the defendant in tort, contract, or statute. So if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim.

*Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). *Cleary*, which is cited by PBM Defendants in support of this motion to dismiss Lake's unjust enrichment claim, stands for the exact opposite of the argument PBM Defendants attempt to pursue. (ECF No. 252 at 44.) PBM Defendants argue Lake's unjust enrichment claims must fail as duplicative of its other claims, whereas *Cleary* makes clear the claims are tied—if one survives, so will the other. 656 F.3d 511. The Court declines to dismiss Lake's unjust enrichment claims, as PBM Defendants' cited law is inapposite and PBM Defendants fail to address which one of Lake's claims its unjust enrichment claim is duplicative of.

New York law differs from that of Illinois, in that courts in New York "will routinely dismiss an unjust enrichment claim that 'simply duplicates, or replaces, a conventional contract or tort claim.'" *Warren v. Coca-Cola Co.*, 670 F. Supp. 3d 72, 89 (S.D.N.Y. 2023) (quoting *Ebin v.*

*Kangadis Food Inc.*, Civ. A. No. 13-2311, 2013 WL 6504547, at *7 (S.D.N.Y. Dec. 11, 2013) (dismissing unjust enrichment claim because plaintiffs failed to explain how it was not merely duplicative of negligent misrepresentation, fraud, and breach of warranty claims)); *see also Alce v. Wise Foods, Inc.*, No. 17-2402, 2018 WL 1737750, at *12 (S.D.N.Y. Mar. 27, 2018) (dismissing unjust enrichment claim as duplicative of NYGBL §§ 349 and 350 claims). "[A]n unjust enrichment claim 'will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action.'" *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 473–74 (S.D.N.Y. 2020) (quoting *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017)).

"[C]ourts in the Second Circuit have consistently held that unjust enrichment claims are duplicative of [NY]GBL claims." *Barton v. Pret A Manger (USA) Ltd.*, 535 F. Supp. 3d 225, 249 (S.D.N.Y. 2021) (citing *Grossman v. Simply Nourish Pet Food Co. LLC*, 516 F. Supp. 3d 261, 285 (E.D.N.Y. 2021) (holding "the unjust enrichment claim duplicates the plaintiff's other claims, which arise out [of] identical facts: the defendants' alleged misrepresentation on the Product packaging . . . the same allegations as her claims of violations of [NY]GBL §§ 349 and 350"); *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 248–49 (S.D.N.Y. 2019) ("Plaintiff's unjust enrichment claim that Defendant was enriched at Plaintiff's expense through payment for the Products duplicates his other claims based on the same alleged misrepresentation that the Products are 'natural,' and is therefore dismissed."); *Borenkoff v. Buffalo Wild Wings, Inc.*, Civ. A. No. 16-8532, 2018 WL 502680, at *5 (S.D.N.Y. Jan. 19, 2018) ("The essence of [plaintiff's] unjust enrichment claim is that (1) she purchased defendants' food items as a result of their material omissions, and (2) defendants[] unjustly retained the revenue from those purchases. Those

allegations are entirely duplicative of [plaintiff's] [NY]GBL § 349 claim, and therefore the unjust enrichment claim must be dismissed under New York law.").

The allegations in Albany's SAC demonstrate this count is duplicative of Albany's other claims. Albany contends PBM Defendants "wrongfully secured and retained a benefit in the form of amounts paid for diabetes medications, unearned fees, and other payments collected . . . generated by the Insulin Pricing Scheme[.]" (ECF No. 148 ¶ 740.) Albany further alleges PBM Defendants "wrongfully secured and retained a benefit in the form of monies paid at artificially inflated prices for the at-issue medications that would not have existed but for [PBM] Defendants' misconduct." (*Id*. ¶ 742.) Albany's claim for unjust enrichment "relies on the same factual allegations and the same theory of liability" as its other theories of recovery. *Hesse*, 463 F. Supp. 3d at 474. While SFP Plaintiffs argue their claims are substantively different because they seek different damages (ECF No. 257 at 43–44), this does not change the fact that they cannot recover twice on the same set of facts. *See Cherotti v. Exphand, Inc.*, Civ. A. No. 20-11102, 2023 WL 5526625, at *12 (S.D.N.Y. Aug. 28, 2023) (finding plaintiff was "not entitled to recover any damages on his duplicative [u]njust [e]nrichment or [c]onversion [c]laims").

Therefore, PBM Defendants' Motion to Dismiss SFP Plaintiffs' unjust enrichment claims is **GRANTED** as to Albany's claims and **DENIED** as to Lake's claims.

### G. King's Claim for Breach of the Implied Covenant of Good Faith & Fair Dealing

PBM Defendants next contend King's claim for breach of the implied covenant of good faith and fair dealing must be dismissed because King failed to identify the contractual provision that PBM Defendants allegedly breached. (ECF No. 252 at 45–46.) Rather, "King merely alludes to vague and undefined obligations of [Express Scripts and CVS Caremark] 'in managing King County's formulary and preferred drug list.'" (*Id*. at 45 (citing ECF No. 160 ¶¶ 518, 520).) King

responds that it "attaches its claim to express contractual provisions, including its rebate and fee provisions," but, even if it had not, the Washington Supreme Court has expressly rejected PBM Defendants' argument requiring SFP Plaintiffs identify the contractual breach." (*Id*. at 45–46.)

"Washington law imposes 'in every contract an implied duty of good faith and fair dealing,' which requires that 'the parties perform in good faith the obligations imposed by their agreement.'" *Smart Apparel (U.S.), Inc. v. Nordstrom, Inc.*, Civ. A. No. 24-2269, 2025 WL 973181, at *2 (9th Cir. Apr. 1, 2025) (quoting *Badgett v. Sec. State Bank*, 807 P.2d 356, 360 (Wash. 1991)). However, this obligation "requires only that the parties perform in good faith the obligations imposed by their agreement." *Badgett*, 807 P.2d at 360.

Here, King fails to identify any contractual provision that CVS Caremark or Express Scripts allegedly breached, and has therefore failed to state a cognizable claim for breach of implied duty of good faith and fair dealing. *In re Amazon Prime Video Litig.*, Civ. A. No. 24-186, 2025 WL 1953060, at *6 (W.D. Wash. July 16, 2025) (dismissing Amazon Prime viewers' claim for their implied covenant because the contract between the parties does not limit Amazon's ability to modify Prime Video at any time and without notice); *see also Haywood v. Amazon.com, Inc.*, Civ. A. No. 22-1094, 2023 WL 4585362, at *5 (W.D. Wash. July 18, 2023) ("[T]he implied duty claim cannot create new contractual obligations; it requires the parties to adhere to the contracts they create."); *Est. of Carter v. Carden*, 455 P.3d 197, 202 (Wash. 2019) ("This duty, however, does not obligate a party to accept any material changes to the terms of its contract. . . . Furthermore, the duty is not free-floating, but 'arises only in connection with terms agreed to by the parties.'" (quoting *Badgett*, 807 P.2d at 360) (internal citations omitted)).

Accordingly, PBM Defendants' Motion to Dismiss King's claim for breach of the implied covenant of good faith and fair dealing is **GRANTED**.

### H. SFP Plaintiffs' Conspiracy Claims

PBM Defendants argue SFP Plaintiffs' civil conspiracy claims must be dismissed because civil conspiracy cannot stand as an independent claim. (ECF No. 252 at 47–48.) They further argue these claims must fail because SFP Plaintiffs "do not plausibly allege the existence of an agreement to accomplish an unlawful purpose." (*Id*. at 48.) SFP Plaintiffs do not disagree that civil conspiracy is not an independent claim, but rather, SFP Plaintiffs assert they properly pled their underlying claims and therefore their civil conspiracy claims should be sustained. (ECF No. 257 at 46.) Regarding the existence of an agreement, SFP Plaintiffs argue PBM Defendants misconstrue their claims, which, on a whole, "support an inference that all Defendants agreed to participate" in the Insulin Pricing Scheme. (*Id*. at 47.) As an initial matter, this Court did not dismiss SFP Plaintiffs' common-law fraud claims and therefore rejects PBM Defendants' contention SFP Plaintiffs' civil conspiracy claims fail as a matter of law. *See supra* Section III.E.

Generally, to state a claim for civil conspiracy, and plaintiff must demonstrate there was an agreement between two or more persons to accomplish either an unlawful purpose or a lawful purpose through unlawful means. *See Freeman v. HSBC Holdings PLC*, 57 F.4th 66, 78 (2d Cir. 2023) ("[T]he elements of civil conspiracy . . . [are] '(1) an agreement between two or more persons; (2) to participate in an unlawful act . . . ; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme.'" (third alteration in original) (quoting *Halberstam v. Welch*, 705 F.2d 472, 477 (D.D.C. 1983)); *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509 (7th Cir. 2007) (explaining to state a claim for civil conspiracy under Illinois law, a plaintiff must allege: "(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one

of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff"); *Am. Pac. Mortg. Corp. v. Everett Fin. Inc.*, Civ. A. No. 21-1088, 2025 WL 1725155, at *17 (W.D. Wash. June 20, 2025) ("To establish civil conspiracy, a plaintiff 'must prove by clear, cogent, and convincing evidence that (1) two or more people combined to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the conspiracy.'" (quoting *Puget Sound Sec. Patrol, Inc. v. Bates*, 389 P.3d 709, 714 (2017)).

Here, SFP Plaintiffs have argued that at least two parties (Manufacturer Defendants and PBM Defendants) had an agreement "to intentionally raise their diabetes medication prices and then pay a significant portion of those prices back to the PBMs." (ECF No. 158 ¶ 755; ECF No. 159 ¶ 660; ECF No. 160 ¶ 489.) SFP Plaintiffs further allege "PBM Defendants need the Manufacturer Defendants to inflate the reported price of their diabetes medications and to make secret payments back to the PBM Defendants in order for the PBM Defendants to profit off the Insulin Pricing Scheme," and, conversely, "Manufacturer Defendants need the PBM Defendants to grant their diabetes medications preferred formulary placement in order to maintain access to a majority of payors and diabetics." (ECF No. 158 ¶¶ 758–59; ECF No. 159 ¶¶ 663–64; ECF No. 160 ¶¶ 492–93.) The Court finds SFP Plaintiffs have sufficiently pled a necessary agreement between Manufacturer Defendants and PBM Defendants, and, therefore, PBM Defendants' Motion to Dismiss SFP Plaintiffs' civil conspiracy claims is **DENIED**.

## I.    SFP Plaintiffs' Corporate Parents & Affiliates

PBM Defendants contend allegations against "uninvolved corporate parents and affiliates—CVS Health Corp.; CVS Pharmacy, Inc.; The Cigna Group; Evernorth Health, Inc.; UnitedHealth Group Incorporated[;] OptumInsight, Inc.; and Optum, Inc.—should also be

dismissed. (ECF No. 252 at 48–49.) PBM Defendants argue SFP Plaintiffs "do not allege any misconduct by these entities"; "fail to plead facts plausibly demonstrating that those companies are the PBMs' alter egos"; and do not plead "a basis for direct liability against any of the uninvolved entities." (*Id.* at 49–50.) SFP Plaintiffs respond they "do not seek to hold parent companies liable for their subsidiaries' conduct under a veil-piercing or alter-ego theory," but rather they seek to hold these entities liable for their own conduct. (ECF No. 257 at 47–50.)

"[A] parent corporation may not be held to account for the liabilities of a subsidiary unless the legal separateness of parent and subsidiary has been disregarded in a wide range of corporate matters." *Esmark Inc. v. N.L.R.B.*, 887 F.2d 739, 753 (7th Cir. 1989); *Mouawad Nat'l Co. v. Lazare Kaplan Int'l Inc.*, 476 F. Supp. 2d 414, 421 (S.D.N.Y. 2007) ("Under New York law, a corporate parent is not automatically liable for the acts of its wholly owned subsidiary."); *U.S. v. Bennett*, 621 F.3d 1131, 1137 (9th Cir. 2010) ("It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries." (quoting *United States v. Bestfoods*, 524 U.S. 51, 61 (1998))). Rather:

> The activities of a subsidiary may suffice to assert jurisdiction over the parent if there is some basis for piercing the corporate veil, such as the parent's unusual degree of control over the subsidiary, but this does not apply in the case of an ordinary parent-subsidiary relationship that observes corporate formalities.

*KM Enters., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 733 (7th Cir. 2013) (citing *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000); *Tiger Trash v. Browning-Ferris Indus., Inc.*, 560 F.2d 818, 823 (7th Cir. 1977) (acknowledging the parent's control over its subsidiary must be more extensive than the typical parent-subsidiary relationship to support to exercise of venue over the parent based on activities of the subsidiary)); *Mouawad Nat'l*, 476 F. Supp. 2d at 421 ("A party seeking to hold a corporate

parent liable for the acts of its subsidiary using a veil-piercing analysis must prove that the parent exercised 'complete domination' over the subsidiary with respect to the transaction at issue."); *Bennett*, 621 F.3d at 1137 ("[T]he sole shareholder and the subsidiary corporation [are] distinct entities, so the liabilities of the former c[an] not be imputed to the latter absent a showing that the corporate form had been abused." (citing *Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004))).

The Court finds that SFP Plaintiffs have sufficiently pled—without invoking a veil-piercing allegations—the involvement of each of the named entities. SFP Plaintiffs allege CVS Health Corp. was involved in creating and implementing company policies that would inform its PBM services and formulary construction, as well as published several misleading statements regarding insulin pricing. (ECF No. 158 ¶¶ 76–85; ECF No. 159 ¶¶ 74–84; ECF No. 160 ¶¶ 73, 165.) CVS Pharmacy, Inc. allegedly "provided retail pharmacy services . . . that gave rise to the Insulin Pricing Scheme[.]" (ECF No. 158 ¶ 91; (ECF No. 159 ¶ 88; ECF No. 160 ¶ 74.) King alleges The Cigna Group "is directly involved in shaping the company policies that inform its PBM services and formulary construction, including with respect to the at-issue drugs, related to the Insulin Pricing Scheme." (ECF No. 160 ¶ 93.) SFP Plaintiffs alleged Evernorth Health, Inc. shaped company policy as to its PBM services and formulary constructions and directed PBM services. (ECF No. 158 ¶¶ 121–24; ECF No. 159 ¶¶ 115–18; ECF No. 160 ¶ 90.) UnitedHealth Group Inc. allegedly "offer[ed] a spectrum of products and services" and is directly involved in the company policies and formulary construction. (ECF No. 158 ¶¶ 173–76; ECF No. 159 ¶¶ 168–72; ECF No. 160 ¶¶ 105–06.) SFP Plaintiffs allege "OptumInsight analyzed data and other information from the Manufacturer Defendants to advise the other Defendants as to the profitability of the Insulin Pricing Scheme to the benefit of all Defendants." (ECF No. 158 ¶ 190;

ECF No. 159 ¶ 185; ECF No. 160 ¶ 108.) Finally, SFP Plaintiffs allege Optum, Inc. informs company policy and formulary construction, and they specifically cite to certain statements made by Optum, Inc. (ECF No. 158 ¶¶ 181–82; ECF No. 159 ¶¶ 176–77; ECF No. 160 ¶¶ 107–09.) It is clear from SFP Plaintiffs' allegations that they sufficiently plead that each entity had its own role to play in the Insulin Pricing Scheme.

Therefore, PBM Defendants' Motion to Dismiss SFP Plaintiffs' claims against defendants CVS Health Corp.; CVS Pharmacy, Inc., The Cigna Group, Evernorth Health, Inc., UnitedHealth Group Incorporated, OptumInsight, Inc., and Optum, Inc. is **DENIED**.

## IV.    CONCLUSION

For the reasons set forth above, PBM Defendants' Motion to Dismiss (ECF Nos. 252, 259) pursuant to Federal Rule of Civil Procedure 12(b)(6) is **GRANTED** in part and **DENIED** in part. An appropriate Order follows.

Date: September 5, 2025                          */s/ Brian R. Martinotti*
                                                **HON. BRIAN R. MARTINOTTI**
                                                **UNITED STATES DISTRICT JUDGE**