**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE: INSULIN PRICING LITIGATION** | **Case No. 2:23-md-03080 (BRM)(LDW)** <br> **MDL No. 3080** |
| **THIS DOCUMENT RELATES TO:** | **OPINION** |
| *Self-Funded Payors Track* <br><br> Case Nos. 2:23-cv-07042, 2:23-cv-08487, 2:23-cv-21178 | |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Defendants Novo Nordisk Inc.'s ("Novo Nordisk"), Sanofi-Aventis U.S. LLC's ("Sanofi"), and Eli Lilly and Company's ("Eli Lilly") (collectively, "Manufacturer Defendants") Motion to Dismiss (the "Motion") Plaintiffs Albany, King, and Lake Counties' ("SFP Plaintiffs") operative Complaints[1] pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF Nos. 249–50.)[2] SFP Plaintiffs filed an Opposition to Manufacturer Defendants' Motion (ECF No. 256), and Manufacturer Defendants filed a Reply (ECF No. 258). Having reviewed and considered the submissions filed in connection with the Motion, and for the reasons set forth below and for good cause having been shown, Manufacturer Defendants' Motion to Dismiss is **GRANTED** in part and **DENIED** in part.

---

[1] (*See* ECF No. 158 (Albany County's ("Albany") Second Amended Complaint ("SAC")); ECF No. 159 (Lake County's ("Lake") First Amended Complaint ("FAC")); ECF No. 160 (King County's ("King") SAC.)

[2] The Court will use the citations on the master docket unless otherwise indicated.

I.    BACKGROUND

A.  Factual History[3]

For the purpose of this Motion to Dismiss, the Court accepts the factual allegations in the First Amended Complaint as true and draws all inferences in the light most favorable to the SFP Plaintiffs. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008); *accord Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019); *Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021); *Wyler Summit P'Ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1988).. The Court also considers any "document *integral to or explicitly relied* upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)); *accord DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010);  *Hobbs v. John*, 722 F.3d 1089, 1091 n.2 (7th Cir. 2013) (citing *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1984)); *United States v. Ritchie*, 342 F.3d 903, 908–09 (9th Cir. 2003).

As the factual and procedural backgrounds of this matter are well-known to the parties, the Court will address only the facts pertinent to this Opinion. This action arises out of Plaintiffs' challenge to Defendants' allegedly unfair and unconscionable pricing scheme for their analog insulin products. There are three groups of plaintiffs: (1) the Class Track Plaintiffs ("TPP Plaintiffs"), SFP Plaintiffs, and the State Attorneys General ("State AG Plaintiffs") (collectively, "Plaintiffs"). (ECF Nos. 158–160.) Plaintiffs generally categorize each defendant into one of two

---

[3] The Court assumes the parties' familiarity with the factual and procedural history of this matter and therefore only includes the facts and procedural history necessary to decide this Motion.

groups: Manufacturer Defendants[4] or PBM Defendants[5] (collectively, "Defendants"). (ECF No. 158 ¶¶ 4–5; ECF No. 159 ¶¶ 4–5; ECF No. 160 ¶ 1.) Plaintiffs contend Manufacturer Defendants, who manufacture the vast majority of insulins and other diabetic medications available in the United States, worked together to artificially and willingly raise their list prices of insulin medications, and then paid an undisclosed portion of that price back to the PBM Defendants in order to gain formulary preference. (ECF No. 158 ¶¶ 4, 12, 17–18; ECF No. 159 ¶¶ 12, 14, 19–20; ECF No. 160 ¶¶ 10–13.) Plaintiffs allege that over the relevant time period, Manufacturer Defendants often raised prices "in lockstep," despite the fact that the cost to produce these drugs decreased during the same time period. (ECF No. 158 ¶ 11; ECF No. 159 ¶ 12; ECF No. 160 ¶¶ 12–14.)

PBM Defendants are pharmacy benefit managers ("PBMs"), or third-party administrators that negotiate drug costs and payments between health insurance providers and drug manufacturers. (ECF No. 158 ¶ 5; ECF No. 159 ¶ 5; ECF No. 160 ¶ 16.) Drug manufacturers set the list prices for their prescription drugs, including insulin. (ECF No. 158 ¶ 11; ECF No. 159 ¶ 12; ECF No. 160 ¶¶ 1, 11.) Here, Plaintiffs allege Manufacturer Defendants engaged in an unfair and unconscionable pricing scheme by artificially inflating the list prices for their insulin products so they could offer rebates as a secret Manufacturer Payment to PBM Defendants in exchange for

---

[4] Manufacturer Defendants are comprised of defendants Eli Lilly and Company ("Eli Lilly"), Novo Nordisk Inc. ("Novo Nordisk"), and Sanofi-Aventis U.S. LLC ("Sanofi") (collectively, "Manufacturer Defendants").

[5] PBM Defendants include Evernorth Health Inc. (formerly Express Scripts Holding Company), Express Scripts, Inc., Express Scripts Administrators, LLC, ESI Mail Pharmacy Service, Inc., Express Scripts Pharmacy, Inc., and Medco Health Solutions (together, "Express Scripts"); CVS Health Corporation, CVS Pharmacy, Inc., Caremark Rx, LLC, Caremark PCS Health, LLC, and Caremark, LLC (together, "CVS Caremark"); and UnitedHealth Group Incorporated, OptumRx Inc., and OptumInsight, Inc. (together, "OptumRx") (collectively, with Express Scripts and CVS Caremark, "PBM Defendants").

preferred formulary[6] placements, which Plaintiffs contend caused them to overpay for insulin products. (ECF No. 158 ¶¶ 18, 20, 22; ECF No. 159 ¶¶ 18–20; ECF No. 160 ¶¶ 1–2, 18.)

SFP Plaintiffs also bring allegations regarding GLP-1s, which are non-insulin medications that can help control insulin levels, especially when they are used in conjunction with insulin. (ECF No. 158 ¶ 251; ECF No. 159 ¶ 249; ECF No. 160 ¶ 286.) SFP Plaintiffs allege Manufacturer Defendants "negotiate rebates and other fees with the PBMs for 'bundles' of insulin and GLP-1 receptor agonist (GLP-1) medications, packaging them as a single class of diabetes medications" in a practice known as "bundling." (ECF No. 158 ¶ 252; ECF No. 159 ¶ 251; ECF No. 160 ¶ 287.) In turn, "Manufacturer Defendants bundle medications to gain formulary access for multiple drugs in exchange for increased manufacturer payments to PBMs." (ECF No. 158 ¶ 253; ECF No. 159 ¶ 252; ECF No. 160 ¶ 288.) SFP Plaintiffs contend "the Manufacturer and PBM Defendants use th[eir] disproportionate pricing power to inflate the prices of GLP-1s, consistent with the broader Insulin Pricing Scheme." (ECF No. 158 ¶ 263; ECF No. 159 ¶ 262; ECF No. 160 ¶ 298.)

### B. Procedural History

Albany filed its initial complaint in the Northern District of New York on September 16, 2022. (Dkt. No. 2:23-cv-07042, ECF No. 1.) Manufacturer Defendants moved to dismiss Albany's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on December 14, 2022. (Dkt. No. 2:23-cv-07042, ECF No. 120.) Pursuant to the court's Order (Dkt. No. 2:23-cv-07042, ECF No. 129), Albany filed an amended complaint on February 24, 2023 (Dkt. No. 2:23-cv-07042, ECF No. 137). Manufacturer Defendants again moved to dismiss Albany's amended complaint under

---

[6] Formularies are a ranked list of approved drugs that an insurance plan will cover. (ECF Nos. 158 ¶ 8; 159 ¶ 8; 160 ¶ 18.) Drug manufacturers offer rebates (and other incentives) to PBMs to gain formulary access for their prescription drugs because they recognize that PBM formularies drive drug utilization. (ECF Nos. 158 ¶¶ 9, 17; 159 ¶ 9; 160 ¶¶ 19–20.)

Federal Rule of Civil Procedure 12(b)(6) on April 14, 2023. (Dkt. No. 2:23-cv-07042, ECF No. 155.) Albany filed its opposition on June 2, 2023 (Dkt. No. 2:23-cv-07042, ECF No. 164), and Manufacturer Defendants filed their reply on June 30, 2023 (Dkt. No. 2:23-cv-07042, ECF No. 171). On August 7, 2023, Albany filed a Notice of Conditional Transfer to Multidistrict Litigation, informing the court of the United States Judicial Panel on Multidistrict Litigation's (the "JPML") Conditional Transfer Order transferring the case to the District of New Jersey for inclusion in MDL No. 3080, *In re Insulin Pricing Litigation*. (Dkt. No. 2:23-cv-07042, ECF No. 173.) Albany's transfer notice was not opposed, and the case was transferred to the District of New Jersey on August 17, 2023. (Dkt. No. 2:23-cv-07042, ECF No. 174.)

Lake filed its initial complaint in the Northern District of Illinois on April 18, 2023. (Dkt. No. 2:23-cv-08487, ECF No. 1.) Manufacturer Defendants moved to dismiss Lake's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on July 14, 2023. (Dkt. No. 2:23-cv-08487, ECF Nos. 71–72.) On August 14, 2023, the JPML filed a Conditional Transfer Order to transfer the case to the District of New Jersey for inclusion in MDL No. 3080, *In re Insulin Pricing Litigation* (Dkt. No. 2:23-cv-08487, ECF No. 103), and the case was transferred to the District of New Jersey that same day (Dkt. No. 2:23-cv-08487, ECF No. 93).

King filed its initial complaint in the Western District of Washington on September 7, 2023. (Dkt. No. 2:23-cv-21178, ECF No. 1.) On September 9, 2023, King filed a Notice of Pendency of Other Action in Another Jurisdiction, requesting the case be transferred to the District of New Jersey for inclusion in MDL No. 3080, *In re Insulin Pricing Litigation* (Dkt. No. 2:23-cv-21178, ECF No. 3), and the matter was transferred on September 21, 2023 (Dkt. No. 2:23-cv-21178, ECF No. 6). King filed its amended complaint on November 7, 2023. (Dkt. No. 2:23-cv-21178, ECF No. 13.)

Pursuant to Case Management Order ("CMO") #6 (Stipulation and Order Governing Motions to Dismiss in the Self-Funded Payor Track), SFP Plaintiffs were permitted to file any amended complaints by April 24, 2024. (ECF No. 128.) On April 24, 2024, Albany filed its SAC (ECF No. 158), Lake filed its FAC (ECF No. 159), and King filed its SAC (ECF No. 160). Manufacturer Defendants filed a consolidated Motion to Dismiss SFP Plaintiffs' complaints pursuant to federal Rule of Civil Procedure 12(b)(6) (ECF Nos. 249–50), SFP Plaintiffs filed a joint Opposition (ECF No. 256), and Manufacturer Defendants filed a Reply (ECF No. 258).

## II.  LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 12(b)(6)

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228; *accord Palin*, 940 F.3d at 809; *Lax*, 20 F.4th at 1181; *Wyler Summit P'Ship*, 135 F.3d at 661. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286; *see also Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008); *Lax*, 20 F.4th at 1181. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *see also see also Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (citing *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556); *accord Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 113 (2d Cir. 2023); *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted); *see also Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (citing *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)). In assessing plausibility, the court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, conclusory or "bare-bones" allegations will no longer survive a motion to dismiss:

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible, allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 670.

While, generally, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002). Specifically, courts may consider any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (emphasis added) (quoting *Shaw*, 82 F.3d at 1220); *accord DiFolco*, 622 F.3d at 111; *Hobbs*, 722 F.3d at 1091 n.2 (citing *Wright*, 29 F.3d at 1248); *Ritchie*, 342 F.3d at 908–09. However, "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342.

### B. Federal Rule of Civil Procedure 9(b)

Pursuant to Federal Rule of Civil Procedure 9(b), when alleging fraud, "a party must state with particularity the circumstances constituting fraud or mistake, although intent, knowledge, and other conditions of a person's mind may be alleged generally." *In re Lipitor Antitrust Litig.*, 868 F.3d 231, 249 (3d Cir. 2017) (internal quotation marks and citations omitted); *see also Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004);

8

*Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *Camasta v. Jos A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). Accordingly, "a party must plead [its] claim with enough particularity to place defendants on notice of the 'precise misconduct with which they are charged.'" *U.S. ex rel. Petras v. Simparel, Inc.*, 857 F.3d 497, 502 (3d Cir. 2017) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 223–24 (3d Cir. 2004), *abrogated on other grounds by Twombly*, 550 U.S. at 557); *see also Kane ex rel. U.S. v. Healthfirst, Inc.*, 120 F. Supp. 3d 370, 382 (S.D.N.Y. 2015); *Murrow v. Quincy Bioscience Holding Co., Inc.*, Civ. A. No. 23-14893, 2025 WL 446149, at *3 (N.D. Ill. Feb. 10, 2025) (citing *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994)); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citing *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

### III.   DECISION

#### A.  Timeliness of SFP Plaintiffs' Claims

Manufacturer Defendants assert all of SFP Plaintiffs' claims should be dismissed as untimely because SFP Plaintiffs knew of their claims at least four years prior to filing suit, barring SFP Plaintiffs claims, all of which are subject to either a two-, three-, or four-year statute of limitations period. (ECF No. 250 at 6–16.) Manufacturer Defendants argue SFP Plaintiffs were on notice of their claims through "their own contracts with PBMs," "widely publicized litigation," "media and governmental discussion of insulin pricing," and Manufacturer Defendants' own disclosures. (*Id*. at 8.) Manufacturer Defendants further assert SFP Plaintiffs' claims cannot be saved through any tolling doctrine. (*Id*. at 13–16.)

However, Manufacturer Defendants' timeliness arguments are moot. After the parties filed all of their papers pertaining to this Motion, this Court, recognizing the statute of limitations issue

affected all Plaintiffs across all tracks in the *In re Insulin Pricing Litigation* (Dkt. No. 2:23-md-3080), accepted supplemental briefing from all parties and heard oral argument regarding the issue of constructive notice. (*See* ECF Nos. 533–38; 563–65; 568, 569; 643, 666, 667.) As determined by this Court, the date of constructive notice for all Plaintiffs is January 14, 2021. (*See* ECF Nos. 706–07.) Because SFP Plaintiffs filed within two years of this date (September 29, 2022 (*see* Dkt. No. 2:23-cv-04214, ECF No. 12)), SFP Plaintiffs' claims are timely and not barred by any applicable statute of limitations.

### B. SFP Plaintiffs' RICO Claims

Manufacturer Defendants argue SFP Plaintiffs' RICO claims fail for three reasons: (1) the indirect purchaser rule bars payors' claims; (2) SFP Plaintiffs fail to plead the required predicate acts of racketeering activity; and (3) SFP Plaintiffs fail to plead that Manufacturer Defendants conducted the affairs of a RICO enterprise. (ECF No. 250 at 16–22.)

### 1. Indirect Purchaser Rule

Manufacturer Defendants first contend SFP Plaintiffs' RICO claims fail because "downstream purchasers of a product cannot assert RICO claims" under the indirect purchaser rule. (*Id*. at 16–17.) Manufacturer Defendants argue they do not sell insulin directly to SFP Plaintiffs—rather, SFP Plaintiffs "make reimbursements for insulin after it has been purchased at a pharmacy by a [SFP Plaintiffs'] beneficiaries—a purchase that itself takes place only after the medication is sold by Manufacturers to wholesalers, and subsequently by wholesalers to pharmacies." (*Id*. at 17.) SFP Plaintiffs respond that their claims are not barred by the indirect purchaser rule but rather falls under the "'co-conspirator exception,' which provides that the indirect purchaser rule 'does not bar suits for damages by plaintiffs against an initial seller when it is alleged to have conspired in violation of the antitrust laws with the seller directly upstream

from plaintiffs.'" (ECF No. 256 at 18 (quoting *Howard Hess Dental Laby's Inc. v. Dentsply Int'l, Inc.*, 424 F.3d 363, 376 (3d Cir. 2005)).) SFP Plaintiffs assert this exception applies here, where SFP Plaintiffs sued both the Manufacturer Defendants and PBM Defendants, and SFP Plaintiffs sufficiently alleged collusion under the test for price-fixing and other conspiracies. (*Id*. at 19–20.)

The Supreme Court developed the indirect purchaser rule in the antitrust context when it held that Clayton Act plaintiffs may not demonstrate injury by providing evidence only of indirect purchases. *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 737 (1977). The Court warned that allowing indirect purchasers to recover under such a theory "would transform treble-damages actions into massive multiparty litigations involving many levels of distribution and including large classes of ultimate consumers remote from the defendant." *Id.* at 740. Moreover, the indirect purchaser rule was also intended to prevent defendants from being exposed to "multiple liability" should both indirect and direct purchasers in a distribution chain be permitted to assert claims arising out of a single overcharge. *McCarthy v. Recordex Serv. Inc.*, 80 F.3d 842, 851 (3d Cir. 1996); *Fiala v. B&B Enters.*, 738 F.3d 847, 851 (7th Cir. 2013); *In re ATM Fee Antitrust Litig.*, 686 F.3d 741, 749 (9th Cir. 2012). Because 18 U.S.C. § 1964(c), RICO's private cause of action, was modeled on the Clayton Act, "antitrust standing principles apply equally to allegations of RICO violations." *Id.* at 855; *Fiala*, 738 F.3d at 851.

"When determining whether a plaintiff and defendant are involved in a direct purchaser/seller relationship, courts look to the 'economic substance of the transaction,' rather than the physical attributes of the transaction or the geographical movement of goods and services." *Animal Sci. Prods., Inc. v. China Minmetals Corp.*, 34 F. Supp. 3d 465, 500 (D.N.J. 2014); *Spinner Consulting LLC v. Stone Point Cap. LLC*, 623 B.R. 671, 676 ("In assessing whether a plaintiff is a direct purchaser, courts examine the 'economic substance of the transaction.'"

(citation omitted)), *aff'd*, 843 F. App'x 411 (2d Cir. 2021). For example, the court in *Howard Hess* "found that, although the defendant manufacturer shipped goods directly to the plaintiff, the purchase was nevertheless 'indirect'; the direct purchaser was the intermediate dealer, not plaintiff, who received the goods. The direct shipment of goods did 'not affect the economic substance of the transaction.'" *Id.* at 500–01 (quoting *Howard Hess*, 424 F.3d at 373). Thereafter, in *Warren General Hospital v. Amgen Inc.*, 643 F.3d 77 (3d Cir. 2011), wherein the plaintiff-hospital sought to represent a class of entities that purchased pharmaceutical drugs manufactured and sold by Amgen, though the complaint did not set forth the mechanics of the drug purchases, "at the motion to dismiss stage, it became clear that Warren General Hospital in practice purchases Amgen's drugs through an independent middleman wholesaler known as AmerisourceBergen." 643 F.3d at 82. Therefore, "to determine whether plaintiff is a direct purchaser, the court must look to the 'economic substance' of the transaction." *Animal Sci. Prods.*, 34 F. Supp. 3d at 502; *Spinner*, 623 B.R. 676.

However, in *Illinois Brick*, the court alluded to an exception to its bright-line rule—"[a]n indirect purchaser may sue if it can establish that the actual direct purchaser, the middleman, has entered into a price-fixing conspiracy with the manufacturer, thus rendering the direct purchaser a 'co-conspirator.'" *Id.* at 505. The Third Circuit again considered the co-conspirator exception in *McCarthy*. 80 F.3d at 854. The Third Circuit ultimately declined to apply the co-conspirator exception in that case, noting "[i]n order to fall within the exception, plaintiffs here would have to allege that the intermediaries immediately upstream . . . colluded with the defendants to overcharge plaintiffs [and] plaintiffs would be obliged to join the [co-conspirators] as defendants, which they have not done." *Id*. The Third Circuit again considered the co-conspirator in *Howard Hess*, finding the co-conspirator exception could apply because plaintiffs alleged "they made purchases from

[defendant]'s dealers (the intermediaries immediately upstream from Plaintiffs) and that [defendant] and its dealers are co-conspirators." 424 F.3d at 376–77; *In re Deere & Co. Repair Serv. Antitrust Litig.*, 703 F. Supp. 3d 862, 881–82 (N.D. Ill. 2023). The Court noted plaintiff would not be able to recover from the two non-joined dealers because the Court "has expressly refused to adopt a co-conspirator exception when the alleged co-conspirators immediately upstream have not been joined." *Id*. at 377 n.8.

Here, SFP Plaintiffs allege branded prescription drugs, such as insulin, are often distributed in one of three ways: "(1) from manufacturer to wholesaler (distributor), wholesaler to pharmacy, and pharmacy to patient, or (2) from manufacturer to mail-order pharmacy to patient; and (3) from manufacturer to mail-order pharmacy, mail-order pharmacy to self-insured payor, and then self-insured payor to patient." (ECF No. 159 ¶ 290; ECF No. 158 ¶ 327; ECF No. 200 ¶ 155.) SFP Plaintiffs contend, and Manufacturer Defendants do not disagree, that it has sued all the intermediaries required to satisfy the co-conspirator exception. (ECF No. 256 at 19.) However, Manufacturer Defendants argue the co-conspirator exception is not satisfied because "by [SFP Plaintiffs'] own admission, [they] are not 'the first non-conspirator' that purchases medications in that supply chain—patients are." (ECF No. 258 at 8 ("[SFP Plaintiffs'] later reimbursements do not transform [SFP Plaintiffs] into direct purchasers.").)

In all three typical distribution methods discussed by SFP Plaintiffs (*see* ECF No. 159 ¶ 290; ECF No. 158 ¶ 327; ECF No. 200 ¶ 155), SFP Plaintiffs are not the first purchasers who are not part of the conspiracy. *See Laumann v. Nat'l Hockey League*, 56 F. Supp. 3d 280, 294–95 (S.D.N.Y. 2014) ("[W]here intermediate purchasers in the chain of distribution . . . [are] participants in the conspiracy, the first purchasers who are not part of the conspiracy 'are entitled to collect damages from both the manufacturers and their intermediaries if conspiracy and

overcharges can be established.'" (alterations in original) (citation omitted); *see also Paper Sys. Inc. v. Nippon Paper Indus. Cp.*, 281 F.3d 629, 631 (7th Cir. 2002). Here, the distribution chain is either interrupted by a wholesaler or a patient. (*See* ECF No. 159 ¶ 290; ECF No. 158 ¶ 327; ECF No. 160 ¶ 155.) Even with regard to SFP Plaintiffs' allegations regarding mail-order pharmacies, SFP Plaintiffs distinctly allege: "The PBM Defendants also own mail-order and specialty pharmacies, which purchase and take possession of prescription drugs, including those at-issue here, and *directly supply those drugs to patients by mail*." (ECF No. 158 ¶ 338; ECF No. 159 ¶ 298; ECF No. 160 ¶ 152 (emphasis added).)

Because SFP Plaintiffs are not direct purchasers, and because their claims fail to fall under the co-conspirator exception, Manufacturer Defendants' Motion to Dismiss SFP Plaintiff's RICO claims is **GRANTED**. *See In re Insulin Pricing Litig.*, Civ. A. No. 17-699, 2019 WL 643709, at *12–13 (D.N.J. Feb. 15, 2019) (dismissing plaintiffs' RICO claims under the indirect purchaser rule where plaintiffs "failed to allege that they directly purchased the analog insulin from Defendants. Rather Plaintiffs claim injury by virtue of inflated prices of their downstream purchase"); *see also MSP Recovery Claims, Series, LLC v. Sanofi Aventis U.S. LLC*, Civ. A. No. 18-2211, 2019 WL 1418129, at *16 (D.N.J. Mar. 29, 2019) (dismissing plaintiffs' RICO claims where "Plaintiffs have failed to allege that they directly purchased the analog insulin from Defendants, but instead claim injury by virtue of inflated prices of their downstream purchase").

### C. SFP Plaintiffs' Consumer Protection Claims

#### 1. State-Law Bars

Next, Manufacturer Defendants argue SFP Plaintiffs' claims under state consumer protection statutes are barred by three state-law limitations: (1) each statute has a safe harbor exempting lawful conduct; (2) this Court has already recognized "the alleged 'insulin pricing

scheme' is not consumer-oriented, and so cannot support a New York General Business Law claim like Albany's"; and (3) Albany and King cannot bring claims as indirect consumers. (ECF No. 250 at 23–28.) The Court addresses each in turn.

### a. Safe Harbors

Manufacturer Defendants contend their conduct in the alleged Insulin Pricing Scheme is exempt from state consumer protection claims pursuant to those statutes' safe harbor provisions. (*Id*. at 23–26.) They contend their reporting of the list prices was required by law pursuant to 42 U.S.C. § 1395w-3a(c)(6)(B). (*Id*. at 24 ("Indeed, this Court has already explained that it 'does not see' how it could require Defendants to report [Wholesale Acquisition Costs ("WACs")] in some other manner 'without causing Defendants to violate federal law.'" (citing *In re Insulin Pricing Litig.*, 2:23-md-3080, 2024 WL 416500, at *28 (D.N.J. Feb. 5, 2024)).) Further, Manufacturer Defendants argue "rebates are authorized by law," and therefore protected under safe harbor provisions. (*Id*. at 25–26 ("Indeed, federal law *requires* Manufacturers to pay rebates in some circumstances." (citing 42 U.S.C. § 1396r-8(a)(1))).)

SFP Plaintiffs respond Manufacturer Defendants actions are not protected by any safe harbor provision, as "[n]o federal or state law specifically authorized the Manufacturers' scheme or the misrepresentations designed to conceal it." (ECF No. 256 at 28–29.) SFP Plaintiffs point out this Court has not yet reached a determination on the legality of list prices, rather it "determined only that the specific injunctive relief requested by the plaintiffs in that case would not be consistent with the statute." (*Id*. at 29.)

New York's General Business Law ("NYGBL") establishes "a complete defense" if the challenged "act or practice is . . . subject to and complies with the rules and regulations of, and the statutes administered by, the federal trade commission or any official department, division,

commission or agency of the United States." N.Y. Gen. Bus. Law § 349(d). Washington similarly has a safe harbor to its consumer protection statutes that exempts all "actions or transactions otherwise permitted . . . by any other regulatory body or officer acting under statutory authority of this state or the United States." Wash. Rev. Code § 19.86.170. Illinois also provides for a safe harbor to its consumer protection actions, providing "[a]ctions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States" are exempted. 815 ILCS § 505/10b(1).

Title 42, § 1395w-3a(c)(6)(B) of the U.S. Code defines WAC as "the manufacturer's list price for the drug or biological to wholesalers or direct purchasers in the United States, not including prompt pay or other discounts, rebates or reductions in price." As this Court has remarked before, "federal regulations do not specify *how* to calculate list prices; list prices are determined by the manufacturer." *In re Insulin Pricing Litig.*, Civ. A. No. 23-03080, 2024 WL 5252471, at *11 (D.N.J. Dec. 31, 2024) (emphasis added); *see also MSP Recovery Claims, Series LLC v. Abbott Lab'ys*, Civ. A. No. 19-21607, 2021 WL 2177548, at *3 (D.N.J. May 28, 2021) ("The WAC is established by the manufacturer, generally does not include rebates, and is published in compendia compiled by independent third parties." (citations omitted)). As such, this Court cannot find that Manufacturer Defendants were acting as "specifically authorized" when calculating their list price, which is what SFP Plaintiffs claim Manufacturer Defendants artificially inflated as part of the Insulin Pricing Scheme. (*See* ECF Nos. 158 ¶ 381 ("Both sets of Defendants realized that if the Manufacturers artificially inflated their list prices to facilitate large, undisclosed Manufacturer Payments back to the PBMs, both the PBMs and Manufacturers would generate billions of unearned dollars."); 159 ¶ 341 (same); 160 ¶ 176 ("PBM Defendants and the

Manufacturer Defendants are free to secretly discuss rebates, administrative fee arrangements, and the like, to artificially inflate the price of insulin, while pocketing substantial sums of money.").

Moreover, this Court has rejected arguments similar to those made by Manufacturer Defendants in this litigation. In *In re Insulin Pricing Litigation*, this Court found that plaintiffs adequately pled mail and wire fraud where plaintiffs "allege[d] that Defendants committed fraud by '[holding] out their artificially increased [Average Wholesale Prices ("AWPs")] as benchmark prices, fully aware that AWP is a pricing index intended to approximate the true cost of a drug.'" 2019 WL 643709, at *5 (second alteration in original) (citation omitted). This Court noted "Plaintiffs further contend that the AWP had no reasonable relationship to the actual price of the drugs, and that Defendants knew of this fraud." *Id.*; *see also Minnesota by Ellison v. Sanofi-Aventis U.S. LLC*, Civ. A. No. 18-14999, 2020 WL 2394155, at *14 (D.N.J. Mar. 31, 2020) (rejecting defendants' argument pointing to "the definition of WAC in the Federal Medicaid program, and argu[ing] it dispelled the deceptiveness of [defendants] non-Medicaid pricing misrepresentations" and denying defendants' motion to dismiss plaintiff's consumer protection claims) (second alteration in original) (internal citations and quotation marks omitted)).

The court in *City of Miami v. Eli Lilly & Co.* also was confronted with an analogous argument, where "[t]he [d]efendants argue[d] that federal law prohibit[ed] including rebates in a list price for pharmaceutical products." Civ. A. No. 21-22636, 2022 WL 198028, at *8 n.8 (S.D. Fla. Jan. 21, 2022). The court rejected the defendants' argument, holding that the "Manufacturer Defendants cannot use Section 1395w-3a(c)(6)(B) to avoid the City's allegations of wrongdoing," where "the City's claim is that the Manufacturer Defendants inflated the price of insulin and other medications through the use of fraudulent rebates that served as kickbacks to the PBM Defendants." *Id.*; *see also In re Pharm. Indus. Average Wholesale Price Litig.*, 582 F.3d 156, 199

(1st Cir. 2009) (affirming that the district court's factual findings were "justified," and "[t]he evidence supported a finding that AstraZeneca unfairly and deceptively published an artificial [AWP] for Zoladex that gave no indication of the actual, substantial discounts and rebates it was providing in the market. This conduct by [AstraZeneca] *was contrary to Congress's intent in designing the Medicare program*, and it clearly transgressed the expectations of the marketplace." (emphasis added)).

Indeed, this Court does not find that Manufacturer Defendants were acting as "specifically authorized" under the Medicaid statute. Congress has not specified how pharmaceutical manufacturers should set the list price or WAC, and, therefore, the Manufacturers Defendants cannot say that their reporting of the WAC was specifically authorized by Congress. *See In re Insulin Pricing Litig.*, 2024 WL 5252471, at *11. As a result, Manufacturer Defendants' actions as alleged do not fall under the safe harbor provisions in New York, Washington, or Illinois. Accordingly, Manufacturer Defendants' Motion to Dismiss SFP Plaintiffs' consumer protection claims pursuant to their respective safe harbor provisions is **DENIED**.

### b. *Consumer-Oriented*

Manufacturer Defendants contend Albany's consumer protection claim is not consumer-oriented and therefore must be dismissed, pointing to this Court's decision in *MSP Recovery Claims, Series LLC v. Sanofi-Aventis U.S. LLC*, Civ. A. No. 18-2211, 2020 WL 831578, at *10 (D.N.J. Feb. 20, 2020), wherein Manufacturer Defendants claim this Court has already determined "the alleged insulin pricing scheme is not 'consumer oriented' conduct." (ECF No. 250 at 26–27.) Manufacturer Defendants contend "Albany is a 'sophisticated business' participating in 'business-to-business transactions,'" and therefore its consumer protection claim should be dismissed. (*Id.*

at 27; *see also* ECF No. 258 at 15 ("New York's General Business Law protects consumers, not businesses—and not Albany.").)

SFP Plaintiffs respond the insulin pricing scheme "directly impacts consumers" and therefore is consumer oriented. (ECF No. 256 at 30 (quoting *Minnesota*, 2020 WL 2394155, at *5).) SFP Plaintiffs argue "[t]he scheme drove patients and public entities, including the [SFP Plaintiffs], to pay inflated prices for the at-issue drugs and forced diabetics to ration or forgo necessary treatment." (*Id*.) SFP Plaintiffs further assert the decision in *Sanofi-Aventis*, 2020 WL 831578, at *10, is inapplicable because "Albany is a county, not a business." (*Id*.)

In general, "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York] are . . . unlawful." N.Y. Gen. Bus. Law § 349(a). "To state a claim, a plaintiff must allege (1) that the defendant's acts were consumer oriented, (2) that the acts or practices are deceptive or misleading in a material way, and (3) that the plaintiff has been injured as a result." *In re Unite Here Data Sec. Incident Litig.*, 740 F. Supp. 3d 364, 386 (S.D.N.Y. 2024). Business-to-business transactions typically do not give rise to Section 349 claims. *See Exxonmobil Inter-Am., Inc. v. Advanced Info. Eng'g Servs., Inc.*, 328 F. Supp. 2d 443, 448 (S.D.N.Y. 2004). "However, New York courts have also held that Section 349 applies broadly to deceptive acts and practices aimed at consumers." *EEDW LLC v. Bank of Am., N.A.*, Civ. A. No. 22-2648, 2024 WL 2802847, at *8 (E.D. Pa. May 31, 2024) (citing *Plavin v. Grp. Health Inc.*, 146 N.E.3d 1164, 1168–69 (N.Y. 2020); *Karlin v. IVF Am., Inc.*, 712 N.E.2d 662, 665–66 (N.Y. 1999); *Walker v. Town of Hempstead*, 643 N.E.2d 77, 78–79 (N.Y. 1994)).

However, as Manufacturer Defendants point out, "[t]his Court has held that '[a]n injury is not consumer oriented if it involves 'business-to-business transactions[,]' including transactions 'involving complex arrangements, knowledgeable and experienced parties and large sums of

money.'" *MSP Recovery Claims*, 2023 WL 8718823, at *15 (quoting *Sanofi-Aventis*, 2020 WL 831578, at *10)). Here, similarly, the parties are sophisticated parties other than consumers— Plaintiffs are three governmental entities (counties), and Defendants consist of two corporations and a limited liability corporation. (ECF No. 158 ¶¶ 32, 41, 53, 64; ECF No. 159 ¶¶ 36, 45, 55, 64; ECF No. 160 ¶¶ 41, 52, 58, 64.) Moreover, this case involves allegations of derivative injuries— not direct injuries. *See Johnson & Johnson Health Care Sys. Inc. v. Save on SP, LLC*, Civ. A. No. 22-2632, 2023 WL 415092, at *7 (D.N.J. Jan. 25, 2023) (finding plaintiff alleged a direct injury because the "alleged injury is not a consumer's injury that is then passed on to [p]laintiff"). In accordance with this Court's decision in *MSP Recovery Claims*, 2023 WL 8718823, at *15, Manufacturer Defendants Motion to Dismiss Albany's consumer protection claim is **GRANTED,** and SFP Plaintiffs' claim under NYGBL is **DISMISSED WITH PREJUDICE**.

### c.  *Indirect Claims*

Manufacturer Defendants next contend King and Albany's consumer protection claims must be dismissed because King is an indirect purchaser who cannot state a claim under the Washington Consumer Protection Act ("WCPA") and Albany brings a derivative action which is barred by the NYGBL. (ECF No. 250 at 27–28.) As this Court has already determined Albany's claim under the NYGBL must be dismissed, *see supra* Section III.C.1.b, it will only consider the arguments made against King.

SFP Plaintiffs have not responded to Manufacturer Defendants' argument that King's claims are not permitted under the WCPA. *See Dreibelbis v. Scholton*, 274 F. App'x 183, 185 (3d Cir. 2008) (concluding the "District Court exercised sound discretion" in refusing to consider an argument that was waived by plaintiff who "had ample opportunity to make this argument in response to defendants' motion to dismiss and failed to do so") (citing *Confer v. Custom Eng'g*

*Co.*, 952 F.2d 41, 44 (3d Cir. 1991); *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy*, 26 F.3d 375, 398 (3d Cir. 1994)); *see also Ragsdale v. Lora*, Civ. A. No. 20-16123, 2021 WL 4099785, at *4–5 (D.N.J. Sept. 9, 2021) (holding plaintiff waived the statute of limitations issue by failing to respond to defendants' arguments) (citing *Leisure Pass N. Am. LLC v. Leisure Pass Grp., Ltd.*, Civ. A. No. 12-3375, 2013 WL 4517841, at *4 (D.N.J. Aug. 26, 2013)). Accordingly, this Court concludes King has waived any argument against this claim, therefore Manufacturer Defendants' Motion to Dismiss with regard to King's consumer protection claims is **GRANTED** and King's consumer protection claim under the WCPA is **DISMISSED WITHOUT PREJUDICE**.

### 2. Deception Claims

Manufacturer Defendants further argue SFP Plaintiffs' consumer protection claims must be dismissed because SFP Plaintiffs have failed to state a claim for deception, as they neither allege a misrepresentation nor an actionable omission. (ECF No. 250 at 28–32.) Since this Court has already determined that Albany's consumer protection claim under the NYGBL, *see supra* Section III.C.1.b, and King's consumer protection claim under the WCPA, *see supra* Section III.C.1.c, must be dismissed, this Court will only consider this argument as to Lake's consumer protection claims under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA").

SFP Plaintiffs fail to respond to Manufacturer Defendants' arguments with regard to Lake. (*See* ECF No. 256 at 32–34.) SFP Plaintiffs do not dispute Manufacturer Defendants' assertion that Lake has failed to allege a misrepresentation, instead asserting "[t]he Manufacturers unpersuasively argue that Albany and King fail to plead deception because they do not identify any misrepresentation or omission." (ECF No. 256 at 32.) SFP Plaintiffs do not refer to Lake or cite to Lake's FAC in arguing the SFP Plaintiffs sufficiently pled deceptive or misleading practices

and material omissions. (*Id*. at 33–34.) Accordingly, Manufacturer Defendants' Motion to Dismiss Lake's deception claim under the ICFA is **GRANTED** and Lake's deception claim under the ICFA is **DISMISSED WITHOUT PREJUDICE**. *See Dreibelbis*, 274 F. App'x at 185; *Ragsdale*, 2021 WL 4099785, at *4–5.

### 3.    Unfairness Claims

Manufacturer Defendants also argue SFP Plaintiffs failed to state unfairness claims under their respective consumer protection statutes. (ECF No. 250 at 32–40.) Again, because this Court has already determined Albany and King fail to state claims under their respective consumer protection statute, this Court will only consider Manufacturer Defendants' arguments with regard to Lake. *See supra* Sections III.C.1.b, III.C.1.c. However, Lake has failed to refute Manufacturer Defendants claim, instead only opposing Manufacturer Defendants' argument that Lake cannot state a consumer protection claim for unfairness under the WCPA. (*See* ECF No. 256 at 35–40.) Consequently, Manufacturer Defendants' Motion to Dismiss Lake's unfairness claim under the ICFA is **GRANTED** and Lake's unfairness claim under the ICFA is **DISMISSED WITHOUT PREJUDICE**. *See Dreibelbis*, 274 F. App'x at 185; *Ragsdale*, 2021 WL 4099785, at *4–5.

### D.  SFP Plaintiffs' Common-Law Fraud Claims

Manufacturer Defendants argue SFP Plaintiffs' common-law fraud claims must be dismissed because SFP Plaintiffs fail to allege a misrepresentation or omission, an intent to induce reliance, or reasonable reliance. (ECF No. 250 at 40–42.)

Common-law fraud requires: "(1) a misrepresentation or omission of material fact; (2) that the defendant knew to be false; (3) that the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) that caused injury to the plaintiff." *Hunt v. Enzo Biochem, Inc.*, 530 F. Supp. 2d 580, 592 (S.D.N.Y. 2008) (citing *Crigger v. Fahnestock &*

*Co., Inc.*, 443 F.3d 230, 234 (2d Cir. 2006)); *see also Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007) (declaring the basic elements of common law fraud are: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement") (quoting *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 591 (Ill. 1996)); *see also Guketlov v. Homekey Mortg., LLC*, Civ. A. No. 09-1265, 2009 WL 3785575, at *4 (W.D. Wash. Nov. 9, 2009) ("Under Washington law, a claim for fraud has the following nine elements: '(1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff.'" (quoting *Stiley v. Block*, 925 P.2d 194, 204 (Wash. 1996))).

Manufacturer Defendants first assert SFP Plaintiffs' common-law fraud claims must be dismissed because SFP Plaintiffs fail to allege a misrepresentation or omission, as "the only misrepresentation [SFP Plaintiffs] allege is Manufacturers' *accurate* statements of their WAC prices" and because SFP Plaintiffs "*knew* the 'omitted' facts." (*Id*. at 40.) Manufacturer Defendants contend there was no misrepresentation because SFP Plaintiffs "do not allege that any Manufacturer ever so much as suggested that list prices accounted for rebates, reflected cost or net price, or were anything other than what federal law defines them to be—*i.e.*, the wholesale acquisition costs of their medication." (*Id*. at 29.) Manufacturer Defendants further claim SFP Plaintiffs fail to allege any omission because SFP Plaintiffs "were fully aware of the difference between the list and net prices: they hired PBMs to create that difference." (*Id*. at 31.) SFP

Plaintiffs respond they "detail 'a fraudulent pricing scheme by virtue of misrepresentations of list prices.'" (ECF No. 256 at 40–41 (quoting *MSP Recovery*, 2019 WL 1418129 at *19).)

While Manufacturer Defendants rely on the fact that there could not have been a misrepresentation because the Manufacturer Defendants published the "accurate" WAC prices, SFP Plaintiffs have adequately alleged other misrepresentations sufficient to state a claim for common-law fraud. For example, SFP Plaintiffs assert Manufacturer Defendants misrepresented that "each Manufacturer priced its at-issue drugs according to each drug's value to the healthcare system and the need to fund innovation" and that "each Manufacturer Defendant and PBM was transparent with Plaintiff regarding the Manufacturer Payments and the PBMs did not retain any funds associated with prescription drug rebates or any the margin between guaranteed reimbursement rates and the actual amount paid to the pharmacies." (ECF No. 158 ¶ 656; ECF No. 160 ¶ 439.[7]) Without reaching the merits of Manufacturer Defendants' arguments that their WAC price was accurate and therefore cannot constitute a misrepresentation, the Court finds SFP Plaintiffs have sufficiently alleged a misrepresentation by Manufacturer Defendants in representing the reasoning behind increased prices.

Manufacturer Defendants contend SFP Payors fail to allege intent to induce reliance. (ECF No. 250 at 41.) SFP Plaintiffs respond their complaints allege they "relied on the Manufacturers' false list prices to pay for the at-issue drugs," and further add that Manufacturer Defendants intentionally "published the list prices in compendia and other materials, which were then used to set the amount charged for the at-issue drugs." However, SFP Plaintiffs allege that they relied upon

---

[7] *See also* ECF No. 159 ¶ 610 ("By intentionally and falsely inflating the list prices, by misrepresenting the purpose behind both the Manufacturer Payments made from each Manufacturer Defendant to the PBMs, . . . each Manufacturer Defendant and PBM Defendant engaged in a fraudulent and unlawful course of conduct[.]").

the misrepresentations by Manufacturer Defendants with regard to purchasing the at-issue drugs at the allegedly inflated prices, asserting "[SFP] Plaintiff[s] relied on Defendants' misrepresentations in paying for the diabetes medications at issue at prices that would have been lower but for the Insulin Pricing Scheme." (ECF Nos. 160 ¶¶ 369, 443–44; 158 ¶¶ 573, 620, 661–62; 159 ¶¶ 513, 557 ("[SFP] Plaintiff[s] and patients reasonably relied on Defendants' affirmative statements to Congress and the public . . . that Defendants were working to lower insulin prices and provide payors with cost savings.").)

Finally, Manufacturer Defendants argue SFP Plaintiffs "fail[ed] to allege either that they relied on Manufacturers' list prices, or that such reliance would have been reasonable" because SFP Plaintiffs continued to contract with PBM Defendants and buying the same medications at supposedly inflated prices and because any reliance by SFP Plaintiffs was not reasonable because SFP Plaintiffs "knew of the difference between list and net price by their own contracts and by public information." (ECF No. 250 at 41–42.) SFP Plaintiffs respond that "their reliance was justified, in part, because it was based on claims of transparency." (ECF No. 256 at 41.) Moreover, SFP Plaintiffs contend "[w]hether that reliance was reasonable is a 'question of fact'" (*id.* (citations omitted)), and that this Court has already held that "each of the elements of a common law fraud claim are adequately pled" (*id.* (quoting *MSP Recovery*, 2019 WL 1418129, at *19)).

SFP Plaintiffs have pled they reasonably relied on the misrepresentations or omissions made by Manufacturer Defendants. (*See* ECF Nos. 158 ¶¶ 618, 620; 159 ¶¶ 555, 557; 160 ¶ 503.) Moreover, SFP Plaintiffs are correct that "[t]he question of whether th[eir] reliance was 'reasonable' is a question of fact for the jury." *Lithuanian Com. Corp. Ltd. v. Sara Lee Hosiery*, 219 F. Supp. 2d 600, 610 (D.N.J. 2002); *see also* ECF No. 256 at 41. Accordingly, Manufacturer Defendants' Motion to Dismiss SFP Plaintiffs' common-law fraud claims is **DENIED**.

### E.  SFP Plaintiffs' Unjust Enrichment Claims

Manufacturer Defendants argue SFP Plaintiff's unjust enrichment claims must be dismissed because: (1) it is a derivative claim that falls with the underlying RICO and common-law fraud; (2) SFP Plaintiffs are indirect purchasers who did not directly confer a benefit on Manufacturer Defendants; and (3) SFP Plaintiffs' unjust enrichment claim is barred by express contracts between SFP Plaintiffs and PBM Defendants. (ECF No. 250 at 42–47.) As an initial matter, this Court rejects Manufacturer Defendants first argument pertaining to derivative claims as moot because the Court did not dismiss SFP Plaintiffs' underlying common-law fraud claims. *See supra* Section III.D.

### 1.    Benefit to Manufacturers

Manufacturer Defendants argue SFP Plaintiffs' unjust enrichment claims should be dismissed because SFP Plaintiffs are "indirect purchasers who have no relationship with Manufacturers," and therefore failed to plead a direct benefit on Manufacturer Defendants. (ECF No. 250 at 43–44.) SFP Plaintiffs contend "no state at issue requires [SFP P]laintiffs to plead a direct benefit in support of unjust enrichment." (ECF No. 256 at 42–44.)

The Second Circuit has clarified "a New York unjust enrichment claim requires no 'direct relationship' between plaintiff and defendant." *Myun-Uk Choi v. Tower Rsch. Cap. LLC*, 890 F.3d 60, 69 (2d Cir. 2018) (citing *Cox v. Microsoft Corp.*, 8 A.D.3d 39, 40–41 (N.Y. 1st Dep't 2004) ("It does not matter whether the benefit is directly or indirectly conveyed." (quoting *Mfrs. Hanover Tr. Co. v. Chem. Bank*, 160 A.D.2d 113, 117–18 (N.Y. 1st Dep't 1990))); *Grund v. Del. Charter Guarantee & Tr. Co.*, 788 F. Supp. 2d 226, 251 (S.D.N.Y. 2011) ("Unjust enrichment does not require a direct relationship between the parties.")). Instead, in New York, "a claim will not be

supported if the connection between the parties is too attenuated." *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1111 (N.Y. 2011).

Here, pursuant to Second Circuit case law, the Court finds the relationship between SFP Plaintiffs and Manufacturer Defendants is not too attenuated to support a claim of unjust enrichment. SFP Plaintiffs contend Manufacturer Defendants knowingly and artificially increased the list prices to gain formulary preference, meaning their insulin was more widely available, leading to increased purchases and subsequent profits. (ECF No. 158 ¶¶ 399, 435, 696.) The Court finds this similar to the facts presented in *Amusement Industries, Inc. v. Midland Ave. Assocs., LLC*, wherein a fraudster convinced plaintiff to deposit about $13,000,000 into an escrow account to purchase properties, but instead, the fraudster transferred the funds into an account held by his company and then disbursed the funds to a number of his family members in order to frustrate plaintiff's attempts to recover it. 820 F. Supp. 2d 510, 519–20 (S.D.N.Y. 2011). The third-party recipients of the stolen funds similarly argued they did not receive the money directly from plaintiff and therefore their relationship must be too attenuated to support a claim for unjust enrichment. *Id*. at 537. That court rejected such arguments, finding the defendants had a sufficiently close relationship with plaintiff to support a claim for unjust enrichment "[b]ecause [plaintiff] alleges that the defendants knew that they were receiving [plaintiff's] escrow funds illegitimately" and in "further[ance of] a money-laundering scheme." *Id*. Here, SFP Plaintiffs allege "[Manufacturer] Defendants agreed to and did inflate the prices of the at-issue drugs in lockstep to achieve an unlawful purpose . . . [and] in exchange for formulary placement." (ECF No. 158 ¶ 696.) Like the third-party recipients in *Amusement*, Manufacturer Defendants knowingly accepted increased profits as a result of their alleged participation in a fraudulent scheme and thereby made the relationship between SFP Plaintiffs and Manufacturer Defendants sufficiently close to bring an

unjust enrichment claim. 820 F. Supp. 2d at 537; *see also City of Almaty v. Sater*, 503 F. Supp. 3d 51, 60–61 (S.D.N.Y. 2020) ("The lack of any direct business dealings between a plaintiff and defendant may undermine the claim that the defendant was unjustly enriched in many circumstances. However, it remains black letter law that 'a plaintiff need not be in privity with the defendant to state a claim for unjust enrichment.' The knowing receipt of stolen funds in furtherance of a money-laundering scheme . . . amounts to a sufficiently close connection to support a claim for unjust enrichment." (citation omitted)).

Washington case law on the indirect conferral of benefits is less clear. In support of their argument, Manufacturer Defendants rely on *Patrick v. Ramsey* for the proposition "that the first element of an unjust enrichment claim requires the plaintiff to confer a benefit on the defendant directly." Civ. A. No. 23-630, 2023 WL 6680913, at *4 (W.D. Wash. Oct. 12, 2023) (citing *Lavington v. Hillier*, 510 P.3d 373, 379 (Wash. Ct. App. 2022); *Falcon Props. LLC v. Bowfits 1308 LLC*, 478 P.3d 134, 140 N.3 (Wash. Ct. App. 2020) (holding buyer's unjust enrichment claim against broker failed where seller, rather than buyer, paid the broker's commission and thus buyer did not confer benefit on broker); *Allyis, Inc. v. Schroder*, Civ. A. No. 74511-5, 2017 WL 751329, at *4–5 (Wash. Ct. App. Feb. 27, 2017) (compiling cases and affirming the trial court's determination that the first element of an unjust enrichment claim requires plaintiff to "directly confer a benefit on the defendant")). SFP Plaintiffs rely on *Maadanian v. Mercedes-Benz USA, LLC*, Civ. A. No. 22-665, 2024 WL 1579658, at *9 (W.D. Wash. Apr. 11, 2024), wherein the court rejected "defendants' argument that the benefit must be conferred on them directly, rather than through [an] intermediary." *Id.* (*See* ECF No. 256 at 42.)

However, as pointed out by Manufacturer Defendants, the plaintiff in *Maadanian* alleged in his complaint "that defendants sold the class vehicle to him and that he conferred a benefit upon

them when he overpaid for his vehicle." *Id*. Moreover, case law suggests Washington courts have more recently adopted a standard "requir[ing] the plaintiff to confer a benefit on the defendant directly." *NC Interactive, LLC v. Amber Studio S.A.*, Civ. A. No. 22-1251, 2024 WL 1832951, at *4–5 (W.D. Wash. Apr. 26, 2024) (dismissing unjust enrichment claim against Defendant A where Defendant B transferred plaintiff's intellectual property and proprietary information ("IP") to Defendant A, which used plaintiff's IP to create and sell products without the necessary contractual rights, finding "any benefit [Defendant A] may have received was conferred by [Defendant B], not by [plaintiff]"); *Allyis*, 2017 WL 751329, at *4–5 (dismissing unjust enrichment claim where plaintiff-employer failed to establish it conferred a benefit on defendant-employer, who hired an employee from plaintiff-employer in breach of a noncompete agreement). Here, SFP Plaintiffs contend "Defendants[8] have knowingly received and retained unjust benefits from Plaintiff as a result of the Insulin Pricing Scheme . . . , including in the form of gross prescription costs paid, copayments, and coinsurance payments, and inequity has resulted." (ECF No. 160 ¶ 536.) However, King's SAC makes clear PBM Defendants are the ones who collect these costs, copayments, and coinsurance payments. (*Id*. ¶ 348.) Accordingly, King has not sufficiently pled that it conferred a benefit to Manufacturer Defendants; rather, any benefits passed through at least PBM Defendants.

Under Illinois law, "[t]o state a cause of action for unjust enrichment, a plaintiff must establish: '(1) the defendant has unjustly retained a benefit to the plaintiff's detriment, and (2) the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.'" *MetroPCS v. Devor*, 215 F. Supp. 3d 626, 634–35 (N.D. Ill. 2016) (quoting *HPI*

_____

[8] Notably, SFP Plaintiffs specifically define "Defendants" in this instance as PBM Defendants and Manufacturer Defendants together. (ECF No. 160 at "Count Six – Unjust Enrichment".) Claims against the PBM Defendants are the subject of a separate decision.

*Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672 (1989)). As noted by

Manufacturer Plaintiffs, in Illinois:

> Where, as here, a party seeks to recover a benefit conferred by a
> third party, unjust enrichment is proper under three limited
> circumstances: "(1) the benefit should have been given to the
> plaintiff, but the third party mistakenly gave it to the defendant
> instead, (2) the defendant procured the benefit from the third party
> through some type of wrongful conduct, or (3) the plaintiff for some
> other reason had a better claim to the benefit than the defendant."

*Cement-Lock v. Gas Tech. Inst.*, 618 F. Supp. 2d 856, 886 (N.D. Ill. 2009) (quoting *HPI Health*

*Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 279 (Ill. 1989)).

SFP Plaintiffs argue, and the Court agrees, that Lake sufficiently "allege[d] that the

Manufacturer[ Defendants] benefitted at the [SFP Plaintiffs'] expense through wrongful conduct."

(ECF No. 256 at 42–44.) Here, SFP Plaintiffs seek to recover direct costs, inflated prices paid by

their beneficiaries, which unjustly benefitted Manufacturer Defendants, who obtained these

benefits through wrongful conduct, *i.e.*, the Insulin Pricing Scheme. Moreover, as determined by

this Court in *MSP Recovery Claims*, 2023 WL 8718823, at *15, Manufacturer "Defendants have

not satisfied their burden of showing that no valid unjust enrichment claim has been presented at

the pleading stage," and therefore Lake's unjust enrichment claims survive a motion to dismiss.

### 2.    Express Contracts

Manufacturer Defendants also argue SFP Plaintiffs' claims fail because "[t]he Amended

Complaints make clear that [SFP Plaintiffs'] claims arise out of their contracts with PBMs." (ECF

No. 250 at 45–47.) Accordingly, "[t]hese issues must be raised with the [SFP Plaintiffs']

contractual counterparties; they are not an appropriate basis for an unjust enrichment claim." (*Id.*

at 46.) SFP Plaintiffs respond that their claims are not barred because their claims fall outside the

scope of any contact with PBMs, as "[t]hese contracts say nothing about whether the PBMs were permitted to manipulate the list prices of diabetes drugs." (ECF No. 256 at 45.)

To prevail on an unjust enrichment claim, 'a plaintiff must show that "(1) the defendant was enriched, (2) at the expense of the plaintiff, and (3) it would be inequitable to permit the defendant to retain that which is claimed by the plaintiff.'" *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 433 (S.D.N.Y. 2017) (quoting *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 290 (S.D.N.Y. 2014)); *see also id.* at 414 ("To prevail on a claim for unjust enrichment under Illinois law, a plaintiff must 'allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.'" (quoting *Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 922 (N.D. Ill. 2013) (applying Illinois law)). However, "New York law 'precludes unjust enrichment claims whenever there is a valid and enforceable contract governing a particular subject matter, whether that contract is written, oral, or implied-in-fact.'" *Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739, 751 (S.D.N.Y. 2017) (quoting *Green Tree Servicing, LLC v. Christodoulakis*, 689 F. App'x 66, 71 (2d Cir. 2017)); *see also People ex rel. Hartigan v. E&E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992) ("Because unjust enrichment is based on an implied contract, 'where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application.'" (quoting *La Throp v. Bell Fed. Sav. & Loan Assoc.*, 370 N.E.2d 188, 195 (Ill. 1977))).

However, SFP Plaintiffs' claims make clear there are no contracts that "clearly cover[]" the dispute at issue here. (*See* ECF No 256 at 44.) SFP Plaintiffs do not allege, and Manufacturer Defendants do not contend otherwise, that there is a contract between SFP Plaintiffs and Manufacturer Defendants. (*See generally* ECF Nos. 158, 159.) The Court recognizes Manufacturer

31

Defendants' argument regarding recovering on an unjust enrichment claim for paying an artificially inflated price (*see* ECF No. 250 at 47–48), however, this characterization of SFP Plaintiffs' claims oversimplifies them. In bringing claims for unjust enrichment, SFP Plaintiffs contend Manufacturer Defendants "wrongfully secured and retained a benefit in the form of amounts paid for diabetes medications, unearned fees, and other payments collected based on the market forces and prices generated by the Insulin Pricing Scheme, and revenues that would not have been realized but for the Insulin Pricing Scheme." (ECF No. 148 ¶ 740; ECF No. 149 ¶ 675.) SFP Plaintiffs are not only complaining of their damages resulting from the artificial prices, but also asserting Defendant Manufacturers made continuous misrepresentations regarding the prices of insulin to manipulate "the fair market value of the goods and services they offered, and which were obtained at [SFP] Plaintiff[s'] expense." (ECF No. 148 ¶ 741; ECF No. 149 ¶ 676.) Manufacturer Defendants do not argue that these claims are covered by an agreement between SFP Plaintiffs and PBM Defendants. (See generally ECF Nos. 250 at 45–47; 258 at 21–23.) Accordingly, the subject matter of SFP Plaintiffs' claims regarding Manufacturer Defendants are not covered by express contract, and therefore, SFP Plaintiffs' unjust enrichment claims as to Albany and Lake cannot be dismissed on these grounds.

Accordingly, Manufacturer Defendants' Motion to Dismiss Albany's and Lake's unjust enrichment claims is **DENIED**.

### F. SFP Plaintiffs' Conspiracy Claims

Manufacturer Defendants assert SFP Plaintiffs' civil conspiracy claims must be dismissed because civil conspiracy is a derivative action that falls along with SFP Plaintiffs' RICO, fraud, and unjust enrichment claims. (ECF No. 250 at 47.) They further assert SFP Plaintiffs' civil conspiracy claims fail independently because SFP Plaintiffs failed to plead the "necessary"

element of agreement. (*Id.* at 47–48.) SFP Plaintiffs agree that civil conspiracy is not an independent claim, but they argue they have sufficiently pled the agreement element of their civil conspiracy claims. (ECF No. 256 at 45–46.) As an initial matter, this Court did not dismiss SFP Plaintiffs' common-law fraud claims and therefore rejects Manufacturer Defendants' contention SFP Plaintiffs' civil conspiracy claims fail as a matter of law. *See supra* Section III.D.

Generally, to state a claim for civil conspiracy, a plaintiff must demonstrate there was an agreement between two or more persons to accomplish either an unlawful purpose or a lawful purpose through unlawful means. *See Freeman v. HSBC Holdings PLC*, 57 F.4th 66, 78 (2d Cir. 2023) ("[T]he elements of civil conspiracy . . . [are] '(1) an agreement between two or more persons; (2) to participate in an unlawful act . . . ; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme.'" (third alteration in original) (quoting *Halberstam v. Welch*, 705 F.2d 472, 477 (D.D.C. 1983)); *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509 (7th Cir. 2007) (explaining to state a claim for civil conspiracy under Illinois law, a plaintiff must allege: "(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff"); *Am. Pac. Mortg. Corp. v. Everett Fin. Inc.*, Civ. A. No. 21-1088, 2025 WL 1725155, at *17 (W.D. Wash. June 20, 2025) ("To establish civil conspiracy, a plaintiff 'must prove by clear, cogent, and convincing evidence that (1) two or more people combined to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the conspiracy.'" (quoting *Puget Sound Sec. Patrol, Inc. v. Bates*, 389 P.3d 709, 714 (2017)).

Here, SFP Plaintiffs have argued that at least two parties (Manufacturer Defendants and PBM Defendants) had an agreement "to intentionally raise their diabetes medication prices and then pay a significant portion of those prices back to the PBMs." (ECF No. 158 ¶ 755; ECF No. 159 ¶ 660; ECF No. 160 ¶ 489.) SFP Plaintiffs further allege "PBM Defendants need the Manufacturer Defendants to inflate the reported price of their diabetes medications and to make secret payments back to the PBM Defendants in order for the PBM Defendants to profit off the Insulin Pricing Scheme," and, conversely, "Manufacturer Defendants need the PBM Defendants to grant their diabetes medications preferred formulary placement in order to maintain access to a majority of payors and diabetics." (ECF No. 158 ¶¶ 758–59; ECF No. 159 ¶¶ 663–64; ECF No. 160 ¶¶ 492–93.) The Court finds SFP Plaintiffs have sufficiently pled a necessary agreement between Manufacturer Defendants and PBM Defendants, and, therefore, Manufacturer Defendants' Motion to Dismiss SFP Plaintiffs' civil conspiracy claims is **DENIED**.

### G.  SFP Plaintiffs' Claims Regarding GLP-1 Medications

Finally, Manufacturer Defendants argue SFP Plaintiffs "do not and cannot plead claims regarding GLP-1 medications" for two reasons: (1) SFP Plaintiffs' challenge to GLP-1 pricing is preempted by federal patent law; and (2) SFP Plaintiffs fail to state a claim as to GLP-1s because they do not plead the characteristics of the Insulin Pricing Scheme apply to GLP-1s. (ECF No. 250 at 48–50.)

#### 1.    Patent Law

First, Manufacturer Defendants contend any claims by SFP Plaintiffs regarding GLP-1s are preempted by federal patent law. (*Id*. at 48 (citing ECF No. 200-1 at 12–17[9]).) They assert

---

[9] Though, here, Manufacturer Defendants point the Court to pages 12–17 of its Motion for Judgment on the Pleadings, the Court believes Manufacturer Defendants meant to rely on its

"[t]he prices that Manufacturers are able to charge for GLP-1s are governed by patent law, which gives Manufacturers a legal exclusivity for a limited time in exchange for discovering and disclosing these innovative new medications." (ECF No. 200-1 at 9.) Manufacturer Defendants rely on their arguments made in their Memorandum of Law in Support of Manufacturer Defendants' Motion for Judgment on the Pleadings (ECF No. 200-1) in asserting SFP Plaintiffs' claims as to GLP-1s are preempted by federal law. Manufacturer Defendants argue SFP Plaintiffs are attempting to "seek to 'penaliz[e] high prices—and thus limit[] the full exercise of the exclusionary power that derives from a patient' [which is] an improper attempt to 're-balance the statutory framework of rewards and incentives' that Congress created." (*Id*. at 10 (quoting *Biotechnology Indus. Org. v. D.C.*, 496 F.3d 1362, 1372 (Fed. Cir. 2007) (first and second alterations in original)).)

SFP Plaintiffs respond their claims are not preempted by federal law because SFP Plaintiffs "challenge marketplace misconduct, not the Manufacturer[ Defendants'] right to benefit from their patents." (ECF No. 256 at 49.) SFP Plaintiffs assert their claims "are grounded in 'misconduct in the marketplace'" which generally does not interfere with Congress' objectives in promulgating patent laws. (*Id*. (quoting *Dow Chem. Co. v. Exxon Corp.*, 139 F.3d 1470, 1474 (Fed. Cir. 1998).) Said another way, SFP Plaintiffs' claims are consistent with patent laws because they "do not claim that diabetes medications are too expensive because they are patented. Instead, they allege that Defendants have flouted the dictates of the market, deceiving payors through their misrepresentations and omissions." (*Id*. at 50.)

---

argument "Claims as to GLP-1s Are Preempted by Federal Law," which appears on pages 8–13 of ECF No. 200-1.

There are three objectives in patent law: "(1) to provide an incentive to invent; (2) to promote the full disclosure of inventions; and (3) to ensure 'that which is in the public domain cannot be removed therefrom by action of the states.'" *In re Lipitor Antitrust Litig.*, 336 F. Supp. 3d 395, 408 (D.N.J. 2018) (quoting *Dow*, 139 F.3d 1474). Keeping in mind these objectives, "the *Dow* court held that when the state law cause of action includes additional elements not found in the federal patent law and state law is not an obstacle to the objectives of federal patent law, it is not preempted even if patent law is implicated." *Id.* (citing *Dow*, 139 F.3d 1473). "As such, the Federal Circuit held that because the state law unfair competition claim included additional elements not found in federal patent law and did not otherwise conflict with the objectives of federal patent law, its claims were not preempted." *Id.* (citing *Dow*, 139 F.3d 1478–79).

Here, the Court does not see any conflict between SFP Plaintiffs' claims regarding the Insulin Pricing Scheme and the objectives of patent law. *See id.* Manufacturer Defendants do not explicitly state which objective of patent law is frustrated by SFP Plaintiffs' claims. (*See generally* ECF No. 200-1.) Moreover, and as noted by SFP Plaintiffs, Manufacturer "Defendants do not cite a single cause suggesting that the patent laws preempt [SFP Plaintiffs'] claims."[10] (ECF No. 256 at 50.) SFP Plaintiffs merely seek to recover the amount they were defrauded by the Insulin Pricing

---

[10] Manufacturer Defendants cite to *Southeastern Pennsylvania Transportation Authority v. Gilead Sciences, Inc.*, 102 F. Supp. 3d 688 (E.D. Pa. 2015), for the proposition that the Third Circuit "squarely reject[s] an attempt to use state law to allege . . . that the price of on-patent prescription drugs was 'excessive, . . . exorbitant and inflated.'" (ECF No. 200-1 at 10 (quoting *Gilead*, 102 F. Supp. 3d at 696).) However, in this case, plaintiffs were "attempting to use state law to regulate or reduce the price of Gilead's patent-protected drugs." *Gilead*, 102 F. Supp. 3d at 702. Plaintiffs argued Gilead could not "exploit its patent rights by charging exorbitant prices." *Id.* Plaintiffs in *Gilead* sought to cap prices of patented medication—here, by contrast, SFP Plaintiffs "simply seek the amounts they were overcharged as a result of Defendants' fraud." (ECF No. 256 at 50.) SFP Plaintiffs are not seeking to cap the amount Manufacturer Defendants can charge for their patented drugs; rather, they seek to recover the amount of damages they were defrauded out of through the Insulin Pricing Scheme.

Scheme—they are not looking to cap the prices of Manufacturer Defendants' patented drug. (*Id*.) Accordingly, SFP Plaintiffs' claims are not preempted by patent law.

### 2.    Failure to Plead

Finally, Manufacturer Defendants argue SFP Plaintiffs cannot plead claims as to GLP-1 medications since their allegations "show that the 'scheme' could not have affected GLP-1s . . . because of key differences between insulins and GLP-1s." (ECF No. 250 at 48–50.) Manufacturer Defendants assert "GLP-1s are novel medications," meaning that SFP Plaintiffs cannot allege (1) GLP-1s are interchangeable (like insulin), therefore formulary exclusions cannot be threatened; (2) "shadow pricing or the introduction of the same GLP-1 at multiple price points"; or (3) "GLP-1s share any of the characteristics that allegedly make insulin prices unfair, like low production cost, age, or supposedly minimal R&D costs." (*Id*. at 49–50; *see also* ECF No. 258 at 24–25.)

SFP Plaintiffs contend they have pled viable claims as to GLP-1s because "[t]he drugs are part of the same unlawful schemes." (ECF No. 256 at 47–48.) SFP Plaintiffs allege: (1) "Manufacturers have artificially inflated prices for insulins and GLP-1s"; (2) "PBMs negotiate insulins and GLP-1s together"; (3) Manufacturer Defendants "used these inflated prices to fund PBM kickbacks for both insulins and GLP-1s"; (4) "Defendants publish false prices for both insulins and GLP-1s in compendia"; and (5) "Defendants relabeled those payments to conceal rebates from payors." (*Id*. at 47.)

The Court finds Manufacturer Defendants' legally unsupported arguments fail. (*See* ECF No. 250 at 48–50.) SFP Plaintiffs allege "Manufacturers negotiate rebates and other fees with the PBMs for 'bundles' of insulin and GLP-1 receptor agonist (GLP-1) medications, packaging them as a single class of diabetes medications," in a practice known as "bundling." (ECF Nos. 158 ¶ 252;

159 ¶ 251; 160 ¶ 287.) Contrary to Manufacturer Defendants' arguments here, SFP Plaintiffs specifically allege "Manufacturer Defendants bundle medications to gain formulary access for multiple drugs in exchange for increased manufacturer payments to the PBMs." (ECF No. 158 ¶ 253; ECF No. 159 ¶ 252; ECF No. 160 ¶ 288.) Further, Manufacturer Defendants assertion that SFP Plaintiffs did not allege GLP-1s are interchangeable is patently untrue, as SFP Plaintiffs list patented GLP-1s and explain they are all "glucagon-like peptide-1 receptor agonists . . . [that] mimic the GLP-1 hormone produced in the body." (ECF No. 158 ¶ 251 n.47; ECF No. 159 ¶¶ 249–50 n.43; ECF No. 160 ¶ 286 n.165.) Though SFP Plaintiffs may not have used the exact language desired by Manufacturer Defendants, SFP Plaintiffs have sufficiently stated their claims as to GLP-1s. *See Iqbal*, 556 U.S. at 679.

Accordingly, Manufacturer Defendants' Motion to Dismiss SFP Plaintiffs' Claims Regarding GLP-1 Medications is **DENIED**.

## IV.  CONCLUSION

For the reasons set forth above, Manufacturer Defendants' Motion to Dismiss (ECF Nos. 250, 258) pursuant to Federal Rule of Civil Procedure 12(b)(6) is **GRANTED** in part and **DENIED** in part. An appropriate Order follows.


Date: September 5, 2025                    */s/ Brian R. Martinotti*
                                           **HON. BRIAN R. MARTINOTTI**
                                           **UNITED STATES DISTRICT JUDGE**

38